SUMMERS, Justice.
In her last will and testament Anne Zemurray Hammett made bequests to James H. Atkinson and others. At her death, Samuel Zemurray III was appointed dative testamentary executor. In the course of administering the succession the executor filed a first tableau of distribution.
In the meantime, Atkinson died and Emile J. Drueil, Jr., was appointed administrator of his succession, and, as such, he has filed an opposition to the first tableau of distribution which is the subject of this litigation.
The opposition was denied and the tableau of distribution was homologated by the trial judge. This judgment was affirmed by the Fourth Circuit. 247 So.2d 249. We granted certiorari on application of the administrator of Atkinson’s succession. 259 La. 54, 249 So.2d 200.
Principally, the opposition at this stage of the proceeding involves the interpretation of two wills left by decedent Anne Zemurray Hammett.
The first will reads as follows :
April '30, 1959
This is my last will and testament. I hereby revoke any prior wills and also the revokable trust entered into by myself and the Hanover Bank. I leave to May Fletcher $30,000. I leave to Margaret Ann Segleau $5,000.
The remainder of my estate I leave my husband Donald Hammett 50% and to my brother, Sam Zemurray 50%.
Ann Pickering Zemurray Hammett
The second will reads as follows:
Jan. 30, 1961
75% of all my monetary real estaste (sic) and stock holdings to Sam Zemurray III with James H. Atkinson as trustee to be held in trust at Sam’s discretion until Sam is 35 years old.
25% of all my monetary, real estaste (sic) and stock holding to James H. Atkinson.
Donald Albert Hammett is no longer my husband and I leave him nothing.
Anne Zemurray Hammett
A third document dated January 4, 1961, filed in the record, which has not been probated, appears to have been drawn by the testatrix as her will. This document, lacking testamentary language, could not serve as a will, but it is referred to for the effect it may have as an aid in interpreting the contested wills.
January 4, 1961
To Whom it may concern,
75% of my monetary, real estate and stock holdings to Sam Zemurray III, with James Howard Atkinson as trustee to be held in trust at James H. Atkin *914 son’s discretion until Sam. Zemurray III is thirty-five years of age.
10% of my monetary, real estaste (sic), and stock holdings to Donald Albert Hammett, my husband as long as he remains my husband. In the absence of which it goes to Sam Zemurray III.
10% of my monetary, real estate and stock holdings to Gaston Lanaux Jr., my half brother, to be held in trust by James Howard Atkinson at the discretion of James Howard Atkinson until Gustave Lanaux Jr. is thirty-five years of age.
21/¿% of my monetary, real estaste (sic) and stock holding to my mother Mrs. Margaret Pickering Zemurray. My furniture to Mrs. Margaret Pickering Zemurray.
2i^ % of my monetary, real estaste (sic) and stock holdings to James Howard Atkinson to be dispensed in accordance with a list provided by me.
3^2 of my jewelry to Cecile Airy Dink-ins.
3/¿ my jewelry to Patricia Shelton Sphorer.
My clothing to Sonia Weinberger Smith.
1/2 of my personal effects to Ruth Boyd.
of my personal effects to Mary Louise Miller.
Anne Zemurray Hammett
After decedent’s death on September 26, 1961 Drueil, in his capacity as administrator of Atkinson’s estate, opposed the probate of the will of January 30, 1961. It was contended that the document did not indicate that the writer intended to make a testamentary disposition. On appeal from a trial court judgment ordering the document probated, the Court of Appeal affirmed, holding that the language in the last sentence of the will, “I leave him nothing”, clearly indicates the necessary testamentary intent. 183 So.2d 416.
The inventory of the succession assets was completed on March 27, 1962. It consists of municipal bonds, cash in banks, stock, jewelry, clothing, furniture and household effects. The bulk of decedent’s estate consists of bonds ($101,841.50), the remainder of the Louisiana assets consisting of stocks, cash, jewelry, clothing, furniture and household effects ($8,814.50). The inventory also discloses that decedent had established a trust on April 21, 1959 with a value of several hundred thousand dollars. Hanover Bank and Trust Company, a New York Corporation, is designated as trustee. The corpus of the trust consists of stocks, bonds and policies of life insurance, all of which are in the State of New York.
Thereafter on May 5, 1967 the opponent here filed a motion to remove the executor for failure to obtain control of the pro *916 ceeds of the trust in the hands of the trustee, Hanover Bank and Trust Company in New York, the contention being that the will of April 30, 1959 revoked "the revokable trust entered into by . . . (testatrix) and the Hanover Bank.”
The executor responded by pointing out that under the law of New York, and in conformity with the specific provisions of the settlor’s inter vivos trust, the trust was not revoked by the will.
Without deciding other questions, the Fourth Circuit affirmed the trial court dismissal of the motion to remove the executor, holding the executor had done nothing to give cause for his removal. 228 So.2d 696.
The instant opposition to the tableau followed on April 25, 1967. We granted review on the contention that the language of the will of January 31, 1961, “monetary, real estaste (sic) and stock holdings,” should have included bonds, whereas the tableau excluded bonds in computing the legacy to Atkinson of “25% of all my monetary, real estaste (sic) and stock holdings
These articles of the Civil Code are pertinent to the interpretation of wills:
Article 1712: In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testatment.
Article 1715: When, from the terms made use of by the testator, his intention can not be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention.
Article 1716: A mistake in the name of an object bequeathed is of no moment, if it can be ascertained what the thing was which the testator intended to bequeath.
As presented, decision of the issue hinges upon the meaning of the words “monetary” and “stocks” in the context of the recited facts. The word “monetary” has to do with money, or pecuniary things. It is synonomous with “financial”, which in its generic sense pertains to things of finance. Webster’s New International Dictionary (2d ed. 1955). In our view, in this context, it is a broad term capable of comprehending “bonds”, “stocks”, “money” and other medium of finance. Moreover, in lay terms “stock” may and often does in the lay mind contemplate bonds as well. 57 Am.Jur, Wills § 1357.
When these wills are read in the light of these definitions and cited articles of the Civil Code, it becomes evident that the testatrix intended “monetary” and “stock” to include bonds.
Thus when the Court of Appeal properly ordered both wills probated, it effectively constituted the will of January 31, 1961 as a codicil to the April 1959 will. Thereaf *918 ter the full expression «of the testatrix’s intention is to be derived from the first paragraph of the April 30, 1959 will and the will of January 30, 1961, the second paragraph of the April 1959 will being revoked and superseded by recognition of the will of January 30, 1961. This revocation must follow, for the latter will is diametrically opposed to the last paragraph of the earlier will. These clauses of the wills cannot be reconciled, and the posterior testament prevails. La.Civil Code arts. 1691, 1693, 1694.
The latter will had the effect of eliminating Sam Zemurray and Donald Albert Hammett as legatees and substituting James H. Atkinson and Sam Zemurray III in their stead, with Atkinson serving as trustee of the younger Zemurray’s legacy until he reached- the age of thirty-five.
Since the circumstances simply indicate the testatrix’s intention to substitute the January 30, 1961 will for the last paragraph of the 1959 will, the particular legacies to May Fletcher and Margaret Ann Segleau remain unaffected. For the legacies in the will of January 31, 1961 are under a universal title and these legacies must contribute to the payment of particular legacies. La.Civil Code art. 1615. After deducting the proportion due to forced heirs, if any, and these special legacies, the entire “monetary . . . and stock holdings” devolve upon Sam Zemurray III and James H. Atkinson, for together, the proportions bequeathed to them amount to 100% or the entire remainder of those succession assets. La.Civil Code art. 1615, There is no substance, therefore, to the opponent’s contention that there will be insufficient assets to satisfy the particular legacies.
This result is more consonant with recognized principles of law, for it results in giving effect to all bequests of the testatrix. La.Civil Code art. 1713; Succession of Mulqueeny, 248 La. 659, 181 So.2d 384 (1965).
Examination of the unprobated document of January 4, 1961, in the light of the succession inventory, demonstrates that the testatrix made dispositions to various persons of her furniture, jewelry, clothing, household furnishings and effects, dividing among five other persons 100% of her “monetary, . . . and stock holdings.” Thereby provision was made for all things she then owned, except an automobile.
It is plain to see from this document that she sought to make disposition of. her .entire estate. To conclude that the bonds were not contemplated in this abortive will, or in a subsequent valid will replacing it and also disposing of 100% of her “monetary . . . and stock holdings,” is to fail to recognize a strong manifestation of testatrix’s intention. La.Civil Code art. 1712.
For instance, the cash belonging to the testatrix at the time of her death was $2,806.97, and stocks, other than bonds, *920 amounted to $850, a total of $3,656.97. The will of April 1959 designated Sam Zemurray and Donald Hammett as legatees of the remainder of testatrix’s estate after the special legacies, totaling $35,000, to May Fletcher and Margaret Ann Segleau. This legacy of the remainder to Sam Zemurray and Donald Hammett by universal title necessarily included bonds. The will of January 30, 1961 substituted Sam Zemurray III and James H. Atkinson for Sam Zemurray and Donald Hammett. Considering these facts, it is difficult to conclude that the latter legacies to Sam Zemurray III and Atkinson contemplated only money and stock under the narrow meaning suggested, a mere $3,656.97, and not the bonds also, the latter comprising the bulk of the estate.
Significantly, in the abortive will of January 4, 1961, as in the will of January 31, 1961, Sam Zemurray III is principal legatee for 75% of decedent’s “monetary, . . and stock holdings.” This with other legacies of testatrix’s “monetary . . . and stock holdings” in either document adds up to 100%, or the whole of her “monetary . . . and stock holdings.”
This consistency, the mathematical precision with which the legacies of “monetary, . . . and stock holdings” was calculated, and the other factors mentioned, together present compelling indications that testatrix did intend to dispose of the entirety of her estate. It follows that she did not intend to leave unbequeathed the principal asset of her estate — the bonds. In layman’s terms she bequeathed them as “monetary . . . and stock holdings.” This pervasive manifestation must be given effect.
For the reasons assigned, the judgment of the Court of Appeal is set aside, the tableau of distribution is revised in accordance with the reasons given and the case is remanded to the trial court for further proceeding consistent with the views herein expressed.
BARHAM, J., concurs.