506 So.2d 1313 (1987)
Leroy H. SCOTT, Jr., Plaintiff-Appellee,
v.
J.S. NOEL, d/b/a River Boat Inn, Defendant-Appellant.
No. 18658-CA.
Court of Appeal of Louisiana, Second Circuit.
May 6, 1987.
*1314 Francis M. Gowen, Jr., Shreveport, for plaintiff-appellee.
Hal V. Lyons and David G. Moore, Shreveport, for defendant-appellant.
Before JASPER E. JONES, FRED W. JONES, Jr., and NORRIS, JJ.
JASPER E. JONES, Judge.
The plaintiff, Leroy H. Scott, Jr., sued defendant, J.S. Noel, d/b/a River Boat Inn, for the balance of the price due under a lease/purchase agreement for a telephone system. The trial court rendered judgment in plaintiff's favor and defendant appealed. We amend and affirm.
Defendant's appeal raises the following issues:
(1) Did the trial court err in concluding the lease/purchase agreement included the "Terms and Conditions of Lease" contained in pages 3 through 5? and
(2) Did the trial court err in awarding plaintiff attorney fees in the amount of *1315 25% of the balance due, as provided for in the agreement?

Background Facts
On August 6, 1985 Jerry Arthur WhittingtonTrust Fund and defendant entered into a written lease/purchase contract which was introduced into evidence at trial as "P-2." By the terms of this agreement, Whittington agreed to supply and install a telephone system in defendant's business and defendant agreed to lease the system for 84 months at the rate of $804.00 per month. Defendant was given an option to purchase the system at the end of the term. He paid the first and last installments up front as per the agreement. The agreement provided defendant with a two year warranty on all parts and labor from Advanced Telecommunication Systems, Inc.
On August 29, 1985 Whittington assigned the lease/purchase contract to plaintiff for $25,000.00 and other consideration. Defendant refused to pay the installments to plaintiff, claiming the system had not been installed. Plaintiff sued defendant for the balance of the price due pursuant to an acceleration clause contained in the agreement, together with interest and attorney fees. Defendant filed an original and supplemental third party demand against Whittington, but the trial court severed the third party demand due to insufficient service of process.
The trial court found defendant liable to plaintiff for $65,928.00, the balance due under the agreement, plus 1½% interest per month from September 11, 1985 until paid. In addition, the trial court awarded plaintiff attorney fees in the amount of 25% of the balance plus interest, as per the agreement.

Issue No. 1The Terms of the Agreement
Defendant contends the trial court erred in concluding the lease purchase contract included pages 3 through 5 of "P-2" labeled "Terms and Conditions of Lease." He testified when he signed "P-2" it consisted of only the first two pages and four days later Mr. Lynch, who notarized "P-2", presented pages 3 through 5 for his signature. Defendant stated he refused to sign and include these pages in the agreement because they contained a waiver of warranty which was inconsistent with his agreement with Whittington. Defendant relies upon Lynch's testimony that defendant rejected pages 3 through 5.
Plaintiff contends the trial judge's credibility call as to whether pages 3 through 5 were included in the agreement is not clearly wrong. He avers the inconsistencies in the testimony of Lynch and defendant support the trial judge's credibility call. Plaintiff points out defendant testified Lynch did not give him legal advice concerning the lease/purchase agreement, but Lynch testified he discussed the agreement with defendant. He further points out defendant testified he was given two pages on one occasion and given pages 3 through 5 on another occasion, but Lynch testified he handed defendant five pages at one time. Plaintiff relies upon Whittington's testimony to the effect he signed the agreement before sending it to defendant and the agreement consisted of five pages when he signed it and when it was returned containing defendant's signature. Whittington further stated he was never informed defendant rejected pages 3 through 5. Plaintiff contends this testimony of Whittington further supports the trial judge's finding that pages 3 through 5 were included in the agreement.

Applicable Law
Courts are bound to give legal effect to all written contracts according to the true intent of the parties and this intent is to be determined by the words of the contract when they are clear, explicit and lead to no absurd consequences. LSA-C.C. arts. 2045 and 2046;[1]LRH, Inc. v. Tiller, 478 So.2d 630 (La.App. 2d Cir.1985); Smith v. Leger, 439 So.2d 1203 (La.App. 1st Cir.1983).
*1316 All provisions of a contract are interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. LSA-C.C. art. 2050;[2]Pendleton v. Shell Oil Co., 408 So.2d 1341 (La.1982); Franks Petroleum, Inc. v. Mayo, 438 So.2d 696 (La.App. 2d Cir.1983), writ den., 443 So.2d 595 (La.1983).
The trial judge is in a better position to evaluate the credibility of witnesses and the weight of evidence than an appellate court which does not see or hear the witnesses. For this reason, a reviewing court should adopt the trial court's findings as its own in the absence of clear error, even if other conclusions from the same evidence are equally reasonable. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Harris v. Pineset, 499 So.2d 499 (La.App. 2d Cir. 1986); writ den., 502 So.2d 114 and 502 So.2d 117 (La.1987).
In the instant case, we conclude the trial judge's finding that the agreement entered into between defendant and Whittington included pages 3 through 5 labeled "Terms and Conditions of Lease" is not clearly wrong. Defendant admitted signing page 2 of the agreement and agreeing to the terms contained on pages 1 and 2. Page 1 of the agreement provides in pertinent part: "The terms and conditions of the agreement are found on the following pages captioned `Terms and Conditions of Lease'." Page 2 of the agreement provides in pertinent part: "The terms and provisions on the annexed pages shall form a part of this contract." The "Terms and Conditions of Lease" provide, among other things, that the lessor does not warrant anything. These terms and conditions further provide they do not alter any warranty given by Advanced Telecommunication Systems, Inc. to the lessee.
Mr. Lynch testified he took "P-2" which contained five pages to defendant who removed pages 3 through 5 and signed on page 2. Lynch stated he notarized defendant's signature, took the first two pages of "P-2" to Whittington and advised him plaintiff rejected pages 3 through 5. Lynch testified he then notarized Whittington's signature on page 2. Lynch further testified he discussed the agreement with defendant before defendant signed it.
Mr. Whittington testified he signed the agreement, which consisted of five pages, and Lynch requested his commission.[3] Whittington informed Lynch no commission would be paid until defendant executed the contract. Whittington testified when Lynch returned the document with defendant's signature, it contained all five pages and Lynch did not inform him defendant rejected pages 3 through 5.
The defendant testified that Lynch only presented him with pages 1 and 2 of the contract at the time he signed and Lynch notarized the contract. Defendant testified that four days later Lynch delivered to him pages 3, 4, and 5 of the contract and that he rejected the additional pages.
The trial judge specifically noted the inconsistent testimony of defendant and Lynch concerning when defendant first received pages 3 through 5 and the role Lynch played in the transaction. The trial judge further noted defendant's high intelligence and the fact he read and signed the first two pages of the agreement which provide that the terms and conditions are found on the following pages.
Construing all of the provisions of the agreement together, we conclude the trial judge committed no error in finding the parties intended to include as part of their agreement the "Terms and Conditions of Lease" contained in pages 3 through 5. The words of the contract are clear, explicit and lead to no absurd consequences. The first two pages of the agreement specifically provide that the terms and conditions on the following pages are part of the contract. Defendant's warranty from Advanced Telecommunication Systems, Inc. *1317 was acknowledged in the "Terms and Conditions of Lease" portion of the agreement. These facts, coupled with the inconsistent testimony of Lynch and defendant, provide a sound evidentiary basis for the trial judge's finding that the parties intended to include pages 3 through 5 in the agreement.

Issue No. 2Attorney Fees
Defendant contends the trial court erred in awarding plaintiff attorney fees of 25% of the balance due under the agreement plus interest. Defendant argues the fee is excessive because there were only two pleadings filed on behalf of plaintiff and they were prepared by a different attorney than the one who represented plaintiff at trial. Defendant acknowledges plaintiff's trial attorney did attend one deposition, but contends the trial lasted only one day and plaintiff called only two witnesses. For these reasons, defendant contends the award for attorney fees, which is over $16,000.00, is grossly excessive.
Plaintiff contends the award for attorney fees is reasonable. He argues his trial attorney was working on a contingent fee arrangement and spent many hours in preparation, research and discovery. Plaintiff points out the trial judge specifically found this litigation was complex. He alternatively contends the fee was proper as liquidated damages under LSA-C.C. art. 2000, citing Bank of St. Charles v. Fire Protection Systems, Inc., 497 So.2d 25 (La. App. 5th Cir.1986).
In Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982), our Supreme Court held that, despite a provision in a promissory note stipulating attorney fees, courts could inquire into the reasonableness of the fee. Apparently in response to this decision, the legislature amended LSA-C.C. art. 1935 by Act. 483 of 1983. After the amendment the article provided:
"The damages due for delay in the performance of an obligation to pay money are called interest. The creditor is entitled to these damages without proving any loss, and whatever loss he may have suffered he can recover no more. But where the parties, by contract in writing, have expressly agreed that the debtors shall also be liable for the creditors attorney fees in a fixed or determinable amount, the creditor is entitled to that amount as well." [Emphasis added]
Leenerts Farms additionally held that a stipulation in a note fixing attorney fees was not a stipulation for the payment of liquidated damages. In enacting the 1983 amendment, the legislature apparently attempted to overrule that portion of Leenerts Farms holding that a stipulation fixing attorney fees was not a stipulation for the payment of liquidated damages. In 1984, the legislature repealed and reenacted Article 1935, incorporating its substance into Article 2000.[4] Article 2000 was amended by Act 137 of 1985, effective July 3, 1985, and this amendment added essentially the same provision relating to attorney fees to Article 2000 that the 1983 amendment added to Article 1935.
Plaintiff correctly cites Bank of St. Charles v. Fire Protection Systems, Inc., supra, for the proposition that under the 1985 amendment to Article 2000, stipulated attorney fees become due when the obligation is not paid, regardless of the extent or value of the services.
We, however, decline to follow the rationale of Bank of St. Charles v. Fire Protection Systems, Inc., supra.
La. Const. art. 5, § 5(B) provides that our supreme court has exclusive original jurisdiction of disciplinary proceedings against a member of the bar. The supreme court has a duty to assert that authority to *1318 regulate the practice of law. As a result of this duty, the Articles of Incorporation of the Louisiana State Bar Association incorporated the Code of Professional Responsibility which regulates attorney's practices and has been recognized as having the force and effect of substantive law. Leenerts Farms, supra; Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La. 1979). These rules set forth by virtue of the court's exercise of its judicial authority override legislative acts which tend to impede or frustrate that authority. Saucier, supra. A statute may have no effect insofar as it is in conflict with the Disciplinary Rules in the Code of Professional Responsibility governing attorneys' conduct. City of Baton Rouge v. Stauffer Chemical Company, 500 So.2d 397 (La.1987); Singer, Hutner, Levine, Seeman & Stuart v. Louisiana State Bar Association, 378 So.2d 423 (La.1979).
Therefore, despite the fact that attorney fees are stipulated in a contract, and notwithstanding LSA-C.C. art. 2000, the courts may inquire into the reasonableness of the fee. Central Progressive Bank v. Bradley, 502 So.2d 1017 (No. 86-C-2242, La.1987); City of Baton Rouge v. Stauffer Chemical Company, supra.
Disciplinary Rule 2-106 of the Code of Professional Responsibility provides certain guidelines Louisiana courts may apply in their review and control of attorney fees established by contract between the parties. Disciplinary Rule 2-106 provides in pertinent part:
(A) a lawyer should not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
(B) a fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of the fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment would preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and the length of time of professional relationship with the client;
(7) the experience, reputation and ability of the lawyer or lawyers performing the service; and
(8) whether the fee is fixed or contingent.
The trial judge, in approving the 25% attorney fee, noted the complexity of the litigation, the pleadings which were filed and the fact that the fee was contingent. The balance due under the agreement when defendant defaulted was $65,928.00 and plaintiff, after trial on the merits, was awarded that amount. See and compare Perrin, Landry, deLaunay & Durand v. Davis, 482 So.2d 976 (La.App. 3d Cir.1986).
The fact that plaintiff's attorney was required to represent plaintiff on appeal along with the other factors cited by the trial judge support the conclusion that plaintiff is entitled to a substantial attorney fee award. However, we conclude that the relatively few pleadings filed, the limited discovery required and the one day trial involving few witnesses are factors which support defendant's contention that 25% of the amount of the award results in an excessive attorney fee award. We find the fee excessive and reduce it to 15% of the amount received as we believe this to be a reasonable fee considering all the circumstances.
We amend the second paragraph of the judgment to read as follows:
"IT IS ORDERED, ADJUDGED AND DECREED that there be judgment here in favor of plaintiff, LEROY H. SCOTT, JR. and against the defendant, J.S. *1319 NOEL d/b/a RIVER BOAT INN, in the amount of SIXTY FIVE THOUSAND NINE HUNDRED TWENTY EIGHT ($65,928.00) DOLLARS together with one and one-half percent (1-1½%) interest per month thereon from September 11, 1985 until paid, plus an attorney fee of fifteen (15%) percent of principal and interest, and for all costs of these proceedings."
As amended AFFIRMED at appellant's cost.
NOTES
[1] LSA-C.C. art. 2045 provides:

"Interpretation of a contract is the determination of the common intent of the parties."
LSA-C.C. art. 2046 provides:
"When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."
[2] LSA-C.C. art. 2050 provides:

"Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."
[3] Whittington agreed to pay Lynch a commission for assisting Whittington in procuring the contract with defendant.
[4] LSA-C.C. art. 2000 provides:

"When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of twelve percent per annum. The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more. If the parties, by written contract, have expressly agreed that the obligor shall also be liable for the obligee's attorney fees in a fixed or determinable amount, the obligee is entitled to that amount as well."