524 So.2d 803 (1988)
SUCCESSION OF George Glen PAYNE.
No. 86-1269.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1988.
Writ Denied March 25, 1988.
Henry H. Lemoine, Jr., Pineville, for plaintiff-appellee.
Alan J. Golden, Colfax, for defendant-appellant.
Before LABORDE and KNOLL, JJ., and CULPEPPER, Judge Pro Tem.[*]
WILLIAM A. CULPEPPER, Retired, Judge Pro Tem.
This case concerns the validity of a will. The testator prepared an Oklahoma "statutory" will on January 7, 1969. On June 15, 1986 he prepared an olographic will in Louisiana. See Appendix 1. On July 12, 1986 the testator took the life of his wife and then his own. His three children subsequently came forward, as heirs, with a petition for probate of the statutory will and with a rule to show why the olographic will should not be declared invalid, both in form and because it contains a prohibited substitution. Since the olographic will named three nonresident beneficiaries, an attorney was appointed to represent them. Through their court-appointed attorney the beneficiaries of the olographic will have opposed the annulment of the will, asserting it to be valid both in form and in creation of a valid testamentary trust. The position of the nonresident beneficiaries is that the trust makes Henry K. Payne (testator's brother) the trustee for the testor's *804 twin granddaughters until they attain the age of 21 years.
At the rule to show cause the trial court annulled the olographic will on the ground that, although it was valid in form, it contained a prohibited substitution. The court, in its reasons for judgment, found the disposition did not comply with LSA-R.S. 9:1731, et seq. of the trust code. The statutory will was proved and admitted to probate. The beneficiaries under the trust (allegedly created by the olographic will) appeal this judgment.

ASSIGNMENT OF ERROR
The appellants allege the court erred in invalidating a bequest which was intended to be, and qualifies as, a disposition in trust.

APPLICABLE LAW
The trial court found the olographic will to be valid in form. Since the will contains the necessary animus testandi, date, and signature of the testator and was proved to be written entirely by the testator himself, we affirm the trial court's finding that it is valid in form. See LSA-C.C. art. 1588.
The appellees assert that the olographic will is null under LSA-C.C. art. 1520 because it contains a prohibited substitution. LSA-C.C. art. 1520 states:
"Art. 1520. Substitutions and fidei commissa
"Substitutions are and remain prohibited, except as permitted by the laws relating to trusts.
"Every disposition not in trust by which the donee, the heirs, or legatee is charged to preserve for and to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee."
A prohibited substitution is defined in Baten v. Taylor, 386 So.2d 333 (La.1979), as having three elements:
"(1) A double liberality, or a double disposition in full ownership, of the same thing to persons called to receive it, one after the other;
"(2) Charge to preserve and transmit, imposed on the first beneficiary for the benefit of the second beneficiary;
"(3) Establishment of a successive order that causes the substituted property to leave the inheritance of the burdened beneficiary and enter into the patrimony of the substituted beneficiary."
A trust is defined in LSA-R.S. 9:1731:
"§ 1731. Trust defined
"A trust, as the term is used in this Code, is the relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another."
The pertinent language of the olographic will is:
"Scense [sic] this is a divorce involed [sic] I leave ½ of the community to Henry K. Payne to be divided equally Between My Twin Granddaughters when they Become 21 years of age."
The language of the olographic will appears to fit within either of the definitions mentioned above, LSA-C.C. art. 1520 or LSA-R.S. 9:1731. However, when the terms of a disposition attacked as a prohibited substitution are susceptible to interpretation in two waysone that the disposition contains the elements of a prohibited substitution, and the other that it does not contain themit is preferable to uphold the interpretation that maintains the disposition. Succession of Moran, 479 So.2d 350 (La.1985). Also, when a will has been written in laymen's terms and without the aid of counsel, the courts must exempt the language from technical interpretation and seek the clear intent of the testator in a purpose consistent with upholding the testament. Succession of Moran, supra; LSA-C.C. art. 1712. A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none. LSA-C.C. art. 1713. The court must presume the testator did not intend to make an invalid disposition. Succession of Moran, supra. These principles mandate an interpretation of the will as creating a trust instead of as creating a prohibited substitution.
*805 Moreover, while the first element of a prohibited substitution mentioned in Baten v. Taylor, supra, is arguably lacking from the will, the third element is definitely missing. The testator has not established an order of succession, since he did not arrange for the property to leave Henry K. Payne's patrimony at his death and enter the patrimony of his granddaughters. Rather, he left the property to Henry K. Payne only until his granddaughters reach 21 years of age. Therefore, the will does not contain a prohibited substitution, since every requirement must be met for the disposition to be construed as such. Succession of Moran, supra.
We find, instead, that a trust has been created. The fact that the testator did not call it a trust is not dispositive of the issue since he wrote his will as a layman without the benefit of legal counsel. No particular language is required to create a trust. LSA-R.S. 9:1753; St. Charles Land Trust, Achille Guibet v. St. Amant, 253 La. 243, 217 So.2d 385 (1968). In Wilbert v. Wilbert, 155 La. 197, 99 So. 36 (1923), the court held that a mystic will which made the testator's two sons universal legatees, subject to the condition that the effects bequeathed by him were not to be divided for five years and were to be managed by his executors for that time or until the happening of a certain condition, created a five-year trust estate, although the word "trust" was not included in the will. See Appendix 2. See also In re Succession of Abraham, 136 So.2d 471 (La. App. 3d Cir.1962). In Wilbert, the court summed up the State's policy as to trust estates as:
"In other words, a testator, looking to the welfare of his children, after his death, is no longer limited by the provision of article 1710 of the Civil Code, prohibiting charges or conditions from being imposed by him on the legitimate portion of forced heirs, if he should see fit to designate `trustees' in his last will and testament for the protection of his heirs, and, to that end, should direct a prudent administration, in safe hands, of his estate for their benefit."
The court found that an interpretation of the will as merely preventing a partition of the testator's estate for five years, thus nullifying the provision, would be a "complete repudiation of all that the testator clearly intended, and the sole purpose of his last will and testament would be defeated." Therefore, since the intention of the testator to create a trust clearly appeared from the language of the will and the trust was a legal and valid disposition, the will was given full effect as written.
Having disposed of the issue of the language necessary to create a trust, we now turn to the requisite elements of a trust. Certain elements must be contained in the trust instrument if the validity of the trust is to be sustained. L. Oppenheimer & S.P. Ingram, Trusts, 11 La. Civil Law Treatise § 102, p. 124 (1977):
"The trust instrument technically is not required to contain specific language of conveyance provided it is clear that title is being transferred to the trustee, because the creation of a trust automatically and by definition effects a transfer of title to the trust property.
"Also, although it is not necessary that the settlor use the word `trust' in the trust instrument, if the settlor clearly indicates in other language of the instrument that he intends to create a trust, still the settlor should state in the trust instrument that he is creating a `trust', to insure that his true intentions are carried out.
"The trust instrument must identify the property that is being transferred in trust, either specially (as in a description of land) or generally (as under a universal legacy).
"The trust instrument is not required either to name the trustee or to provide a method for the selection of the trustee. If the trust instrument is silent, a trustee will be appointed by the court. It is advisable, however, to name the trustee in the trust instrument so that the intentions of the settlor will be carried out more closely and so that there will be less delay in setting the trust in operation.

*806 "Except with regard to certain particularized types of trusts discussed below, a beneficiary must be designated by the trust instrument. The trust fails only if neither an income nor a principal beneficiary is named in the trust instrument.
"The trust instrument is not required to provide for the modification, termination or rescission of the trust, to state the terms of the trust, or to regulate the duties and powers of the trustee, the compensation and indemnity of the trustee, or the liabilities of the trustee."
See LSA-R.S. 9:1731, 9:1753, 9:1785, 9:1802. The will before us transfers the property to Henry K. Payne, who is the intended trustee, the property is identified in the will, the trustee and the beneficiaries are named and the nature of the relationship created in the will is that of a trust relationship. A trust instrument shall be given an interpretation that will sustain the effectiveness of its provisions, if the trust instrument is susceptible of such an interpretation. LSA-R.S. 9:1753; St. Charles Land Trust, Achille Guibet v. St. Amant, supra. Since all the requirements for a trust are met, and upholding the interpretation of the will as creating a trust effectuates the clear intent of the testator, we find that a valid testamentary trust has been created.
The appellees also assert that, even if the disposition is construed as a trust, the trust is invalid because it is not in the proper form for a trust under LSA-R.S. 9:1752.
However, the appellees err in citing R.S. 9:1752, since it is applicable to inter vivos trusts only. This case involves a testamentary trust, under LSA-R.S. 9:1733.
"§ 1733. Testamentary trust defined
"A trust is testamentary when it is created by donation mortis causa."
"§ 1751. Form of testamentary trust
"A testamentary trust may be created in one of the forms prescribed by the laws regulating donations mortis causa."
The testamentary trust herein clearly meets the requirements under LSA-9:1751. The olographic will creating the trust is valid in form. Therefore, the testamentary trust is valid in form.
Finally, the appellees contend that the language of the will indicates the testator was having "difficulty in his reasoning facilities." No contention or evidence of lack of capacity of the testator was introduced into the pleadings or record. Therefore the argument cannot be considered in this appeal.

CONCLUSION
Accordingly, for the reasons assigned above, the judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed to the appellees.
REVERSED AND REMANDED.
*807 
The following is the text of the will involved in Wilbert v. Wilbert cited and discussed in the text of the opinion in this case:
"I direct that no partition or division of my stock or of my interest in the A. Wilbert's Sons Lumber and Shingle Co., or in the Myrtle Grove Planting and Manufacturing Company, or of any property *808 that is held in common between me and my said brothers be made between my heirs within five years from my death, unless such company should be dissolved or the property sold before that time; in which event my said heirs are to receive, share and share alike, the portion of my estate in said sale or liquidation.
"I give each of my said heirs two thousand dollars per annum, payable quarterly, out of my interest in the companies above referred to for said period of five years. In the event of dividends being declared, these amounts are to be deducted therefrom, and the surplus of all dividends is to be paid over to my said sons share and share alike.
"I appoint my brother, Frederick Wilbert, George Wilbert, Charles Wilbert, and Joseph Wilbert, executors, with seizin and without bond, to handle, manage and conduct all of my affairs in the companies mentioned above and in all properties, movable and immovable, rights and credits, etc., which I own or hold in common with my said brothers, with full power to sell or dispose of the same or any part thereof, and I charge them with the payment of my just debts.
"I also appoint my said sons Philip and Peter, my executors, with seizin and without bond, for the management of whatever property, other than that mentioned in the foregoing paragraph, I may own at my death."
NOTES
[*] Honorable William A. Culpepper, Judge, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.