755 So.2d 265 (1999)
SUCCESSION OF Wilhilda Pabel PARHAM.
No. 98 CA 1660.
Court of Appeal of Louisiana, First Circuit.
September 24, 1999.
*266 Edward J. Deano, Jr., Mandeville, for Defendants/Appellants, Lee C. and Dorothy Grevemberg.
William J. Jones, Jr., Covington, for Defendants/Appellees, John and Philip Parham.
Salvador J. Liberto, Jr., Covington, for Defendants/Appellees, Grace Strauss.
Yvette Stucker, Isabel, Plaintiff/AppelleePro Se.
Before: CARTER, C.J., LeBLANC, and PETTIGREW, JJ.
*267 CARTER, C.J.
This appeal arises from a judgment in a will contest involving two statutory wills of Wilhilda Pabel Parham (Hilda Parham). The trial court found that a will executed in 1996 by Hilda Parham had not been revoked by a subsequent will executed in 1997, 34 days prior to her death. The trial court also invalidated provisions contained in the later will, which bequeathed an 85% interest in her estate to her attorney, Lee C. Grevemberg, who had prepared and notarized both wills. Lee C. Grevemberg, and his wife, Dorothy, appeal.

FACTS
On August 26, 1996, Hilda Parham executed a statutory will (the 1996 Will, attached hereto as Appendix A) which had been prepared by her attorney and friend, Lee C. Grevemberg. Hilda Parham was the widow of Claude E. Parham. Hilda had no children or siblings, and had been predeceased by her parents. The 1996 Will named Yvette Stucker as the Executrix for the estate and provided a legacy to Stucker of $1,000.00. The remainder of her estate was bequeathed to Philip and John Parham, nephews of her late husband, who resided in Oklahoma.
Philip and John Parham, and their wives, did not have regular personal visits with Hilda but maintained frequent contact with her through correspondence and phone calls. Philip's wife, Karen, and John's wife, Kathy, both indicated they had a good relationship with Hilda. Philip and John Parham's mother, Thelma Langley, also indicated she had a good relationship with her sister-in-law. Langley testified she had unsuccessfully tried to convince Hilda to move to Oklahoma after Hilda's husband died so she could be closer to the rest of the family.
Hilda was not in good health, and in December 1996, she had a portion of one of her lungs removed because of cancer. Yvette Stucker, who was a friend of Hilda's, took care of her after the surgery and took her to her radiation treatments, chemotherapy treatments, and other doctor's appointments. According to Stucker, she made sure that Hilda's prescriptions were filled, that her groceries were bought, and that her mail was read to her. Stucker and her husband both frequented Hilda's home to assist her as her illness grew worse.
Lee C. Grevemberg had handled various legal services for Hilda since 1981, including Claude E. Parham's succession and the sale of property in Arkansas. Grevemberg was not related to Hilda Parham. Grevemberg testified that prior to Hilda's 1996 Will being executed, he talked to her at least once a week and saw her approximately four or five times a year. After her 1996 Will was executed, the frequency of her phone calls increased to the point that his wife became angry. Grevemberg himself admitted her frequent phone calls to his home had become a nuisance. Grevemberg testified he also began to see her more often, usually two to three times a week, but sometimes more often. Grevemberg explained that he was just being friendly and enjoyed the conversations he had with Hilda.
Grevemberg eventually became aware that Hilda was suffering from cancer and in April 1997, at Hilda's request, he drafted a Living Will for her and he also became her agent through a power of attorney. About this same time, Hilda sent Philip and John Parham the jewelry that belonged to her and their uncle, which she kept in her safety deposit box. In a letter dated April 14, 1997, she mentioned that Lee C. Grevemberg was her attorney, and provided his address and telephone number and also informed Philip and John that Yvette Stucker was the Executrix of her estate and listed her address and telephone number. Although they were aware Hilda was not in good health, Hilda never informed Philip and John or their families that she had cancer. Kathy Parham's last phone conversation with Hilda took place on April 21, 1997, wherein she offered to *268 go and stay with Hilda, but Hilda declined the offer and explained that her friends were looking after her. Karen and Kathy Parham both indicated that all calls and messages they left for Hilda went unreturned after Kathy's last call on April 21, 1997.
As Hilda's health began to decline, Grace Strauss, a long-time friend of Hilda's, moved into Hilda's house in early June to take care of her. Strauss administered Hilda's medicine and assisted her in her daily needs. According to Strauss, as Hilda's health began to worsen, Hilda said she did not want any visitors or calls, except for Grevemberg. Although there are conflicting accounts of the circumstances surrounding Strauss's moving into Hilda's residence, the trial court found Hilda had invited her to live with her as her health worsened. Grevemberg also indicated that Hilda had expressed gratitude for Strauss's presence because Hilda feared being placed in a nursing home.
On June 20, 1997, Hilda executed another will prepared and notarized by Grevemberg (the 1997 Will, attached hereto as Appendix B). At this time, Hilda was too sick to sign the will in Grevemberg's office so he brought the paperwork and two witnesses to Hilda's house. The 1997 Will was executed in her home and witnessed by Rene and Sherri Harris, longtime friends of Grevemberg.
The 1997 Will purportedly revoked all prior wills and named Grevemberg Executor. The legacy to Stucker was increased to $5,000.00, and Hilda bequeathed all of the furnishings of her home and a 15% interest in her real estate to Grace Strauss. Grevemberg was named a legatee of all of Hilda's cash and accounts at Hibernia National Bank and of the remaining 85% interest in her real estate. The 1997 Will also contained a clause indicating that if any of the bequests made to Lee C. Grevemberg were prohibited or a conflict of interest or legal ethics because he was the Notary Public before whom the Will was executed, or he should predecease Hilda, then Dorothy Grevemberg, who was Lee C. Grevemberg's wife, would be the alternate residual legatee. When the 1997 Will was executed, Lee Grevemberg directed Hilda to scratch a line through her signature on the 1996 Will, and he then wrote "VOID" across it. The 1996 Will was never completely destroyed and eventually was returned to Lee Grevemberg, who kept it in his office.
On July 9, 1997, Elizabeth Harig, a teller at Hibernia Bank branch where Hilda kept her accounts, received a phone call from Hilda, who was in the hospital. Harig was familiar with Hilda from previous dealings with her at the bank. According to Harig, Hilda wanted Grevemberg's name added to all of her accounts so they would be joint accounts. Harig explained that if Grevemberg were to predecease her, his family would have a right of inheritance to the money in the accounts, but Hilda indicated she understood and wanted the accounts to be joint.
On July 10, 1997, Harig went to the hospital for Hilda to complete the paperwork to add Grevemberg to her accounts. When Grevemberg later went to the bank to provide the necessary information, he told Harig that the change of accounts was for tax purposes. Harig testified that at all times she was under the impression that Hilda knew what she was doing.
Hilda's cancer continued to progress, and she died on July 24, 1997, in her home. The families of Philip and John Parham were not informed of her death until two days later, after the funeral had taken place. Approximately a week and a half later, Karen Parham called Stucker and was informed of the change in Hilda's will. Alarmed at their impression that such a change was out of Hilda's character, Karen and her sister-in-law, Kathy, traveled from Oklahoma to Covington in order to investigate the circumstances surrounding the change in Hilda's will.
While in Covington on August 12, 1997, they attempted to see Grevemberg to request *269 they be sent the family photos that Hilda had in her home. Grevemberg was not in his office, but Rene Harris, who had the adjacent office, instructed them to go in and leave their names and addresses on Grevemberg's desk. While in Grevemberg's office, the Parhams discovered Hilda's 1996 Will and removed it from his office. Karen and Kathy Parham brought the 1996 Will to their attorney.
Five days before Karen and Kathy Parham reached Covington, the 1997 Will was probated on August 7, 1997, in the 22nd Judicial District in St. Tammany Parish. According to the Sworn Detailed Descriptive List prepared by Grevemberg, the gross value of Hilda Parham's estate before payment of funeral expenses and legacies was $194,373.17. From that amount, a $25,000.00 legacy to Grace Strauss was to be deducted, along with the $5,000.00 legacy to Yvette Stucker, and $400.00 as the value of the furniture bequeathed to Grace Strauss. This left a net value of the estate of $163,973.17.
On September 3, 1997, Philip and John Parham filed a Rule to Show Cause in Hilda Parham's succession proceeding seeking to annul the 1997 Will. After the hearing on the rule, the trial court probated and upheld the validity of both wills, but invalidated certain provisions of each will. As to the 1997 Will, the trial court invalidated all bequests to Lee and Dorothy Grevemberg, and their appointment as Executor and Successor Executrix, upheld the bequest to Yvette Stucker of $5,000.00, upheld all bequests to Grace Strauss and invalidated the revocatory clause of the 1997 Will.
As to the 1996 Will, the trial court invalidated the $1,000.00 bequest to Yvette Stucker, upheld the bequest of the remainder of the estate to Philip and John Parham, invalidated the appointment of Lee Grevemberg as attorney, validated the appointment of Yvette Stucker as Executrix, and nullified the purported revocation by defacement of the 1996 Will. The trial court also found that the addition of Lee C. Grevemberg to Hilda's accounts prior to her death did not constitute a valid donation and ordered the funds in such accounts (No. XXXXXXXXX, No. XXXXXXXXXX, CD No. 357126 and the contents of a safety deposit box No. 129 all located at Hibernia Bank) to be surrendered and delivered to Yvette Stucker as Executrix.
The Grevembergs appeal the judgment of the trial court, arguing that the Parhams have no right of action, that the 1996 Will had been revoked, that either Lee or his wife, Dorothy Grevemberg, should be granted the residual legacy, and that Lee Grevemberg should be the Executor of Hilda Parham's succession.

DISCUSSION
The objection of no right of action tests whether plaintiff has a "real and actual interest" in a suit, or stated another way, determines whether plaintiff belongs to the particular class to which law grants remedy for the particular harm alleged. Sivils v. Mitchell, 96-2528, p.3 (La.App. 1st Cir.11/7/97); 704 So.2d 25, 27. In the present case, the trial court properly found Philip and John Parham had a right of action to contest the validity of Hilda Parham's 1997 Will and the revocation of the 1996 Will since they were named the residuary legatees in her 1996 Will. As residuary legatees of the 1996 Will, Philip and John Parham have a clear right of action in the determination of whether the 1996 Will was properly revoked since it affects whether they are entitled to their legacy.
Grevemberg argues that either he or in the alternative, his wife, should receive the legacy granted to them in the 1997 Will. However, Louisiana State Bar Association Rules of Professional Conduct, Rule 1.8(c) provides:
A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, *270 except where the client is related to the donee.
The plain language of Rule 1.8(c) prohibits Grevemberg or his wife from being a legatee in the 1997 Will. The 1997 Will was both prepared and notarized by Grevemberg. Further, LSA-C.C. art. 1592 prohibits an heir or legatee from being a witness to the testament. Jurisprudence has held clauses in testaments granting bequests to a presiding notary to be null because the notary is considered the presiding officer and a witness to the execution of the testament. See Succession of Purkert, 184 La. 792, 167 So. 444, 448 (1936).
The Louisiana Rules of Professional Conduct (formerly the Code of Professional Responsibility) have the force and effect of substantive law. Succession of Wallace, 574 So.2d 348, 350 (La.1991). The Rules of Professional Conduct, set forth by virtue of the court's power and responsibility to exercise its judicial authority, override legislative acts which tend to impede or frustrate that authority. See Succession of Wallace, 574 So.2d at 350. A statute may have no effect in so far as it is in conflict with those rules governing attorney's conduct. Scott v. Noel, 506 So.2d 1313, 1318 (La.App. 2nd Cir.1987).
The Louisiana Supreme Court has stated in Succession of Cloud, 530 So.2d 1146, 1150 (La.1988) that:
The disciplinary rules are mandatory rules that provide the minimum level of conduct to which an attorney must conform without being subject to disciplinary action. When an attorney enters into a contract with his client in direct and flagrant violation of a disciplinary rule and a subsequent civil action raises the issue of enforcement (or annulment) of the contract, this court, in order to preserve the integrity of its inherent judicial power should prohibit the enforcement of the contract which directly contravenes the Code adopted by this court to regulate the practice of law. Otherwise, this court's authority to regulate attorney conduct will be substantially undermined. (Citations omitted.)
It necessarily follows that the rules of testamentary interpretation may not be used in a manner allowing an attorney to enforce or benefit from an agreement that contravenes the rules adopted by the Louisiana Supreme Court that regulate the practice of law.
Grevemberg argues the trial court erred in finding the 1996 Will had not been revoked. The trial court found that immediately after the execution of the 1997 Will, Hilda, at the direction of Grevemberg, lined through her signature on the 1996 Will, and Grevemberg wrote "VOID" across the 1996 Will. The trial court found this defacement was an intricate part of the transaction or the process of executing and seeking to make effective the 1997 Will, as the 1996 and 1997 Wills were in irreconcilable conflict as to who would be the residuary legatee.
We agree that Rule 1.8(c) not only prohibits the Grevembergs from receiving the residuary legatee, it also prohibits the revocation of the 1996 Will since it was an intricate part of the execution of the 1997 Will, which directly benefited Grevemberg. The revocation clause is included in the provisions that benefited Grevemberg because a later provision dispensing with the same property is deemed to revoke the prior legacy. See Succession of Hammett, 261 La. 909, 261 So.2d 611, 614 (1972). In addition, this present matter is distinguishable from the jurisprudence allowing only a particular disposition in a testament to be held invalid, but such invalidity does not operate to invalidate the entire will. Succession of Reynolds, 224 La. 975, 71 So.2d 537, 541 (1954).
Rule 1.8(c) addresses a violation of a fiduciary duty by a lawyer who prepares an instrument. Because the defacement of the 1996 Will and the inclusion of the revocation clause in the 1997 Will are so connected with the prohibited conduct *271 by Grevemberg, we find that violation taints every portion of the defacement of the 1996 Will and the revocatory clause of the 1997 Will. Under the authority of Rule 1.8(c), we find the trial court was correct in nullifying all aspects of the 1997 Will benefiting the Grevembergs, including the revocatory clause. Further, we find no error in the trial court's judgment that the defacement of the 1996 Will did not constitute any type of revocation.
Finally, we note Grevemberg contends he should still be appointed the Executor of Hilda's estate. The trial court held the appointment of Lee C. Grevemberg or Dorothy Grevemberg as Executor or Executrix to be invalid and absolutely null and void. We agree with this finding of the trial court. An Executor has a fiduciary duty to the succession, and we find Grevemberg's violation of Rule 1.8 exhibits a violation of that fiduciary relationship.

CONCLUSION
Based on the above and foregoing reasons and the judgment of the trial court (attached hereto as Appendix C), we affirm the decision of the trial court. All costs of this appeal are assigned to appellants, Lee C. Grevemberg and Dorothy Grevemberg.
AFFIRMED.

*272 APPENDIX A

*273 APPENDIX B

*274 

*275 APPENDIX C

*276 
*277 
*278 
*279 
*280