526 So.2d 1386 (1988)
LOUISIANA BANK & TRUST COMPANY, Plaintiff-Appellant,
v.
John C. ANDERSON, et al., Defendants-Appellees.
No. 87-435.
Court of Appeal of Louisiana, Third Circuit.
June 7, 1988.
Oscar W. Boswell, III, Crowley, for plaintiff-appellant.
Gold, Weems, Bruser, Sharp, Sues & Rundell, Charles S. Weems III, Alexandria, Juneau, Hill, Judice, Hill & Adley, P.L.C., Mark W. Judice, Lafayette, Watson, Blanche, Wilson & Posner, Felix R. Weill, Baton Rouge, Andrus, Boudreaux, Lemoine & Tonore, Gregory P. Touchet, Lafayette, for defendants-appellees.
Before LABORDE, KNOLL and KING, JJ.
*1387 KNOLL, Judge.
Louisiana Bank and Trust Company (hereinafter Louisiana Bank and Trust) initiated this tort claim against John C. Anderson, the law firm of Anderson, Anderson, Hausey, Rainack & Stakelum, Darryl K. Manning, D. Rex English, and National Union Fire Insurance Company (hereinafter defendants), contending defendants were liable to it for amounts lost by the improper expenditure, during Chapter 11 Bankruptcy proceedings, of accounts receivable that their bankrupt client, Underwater Completion Team, Inc. (hereinafter UCT), assigned to it prior to the commencement of bankruptcy. The trial court granted defendants' motions for summary judgment and dismissed Louisiana Bank and Trust's damage claim, finding (1) that defendants owed no duty to UCT's creditors which would modify their otherwise ethical and legal responsibilities; and (2) that defendants' advice to UCT was in any case correct under the law as it existed at the time the advice was given.
Louisiana Bank and Trust appeals, contending the trial court erred by: (1) granting defendants' motions for summary judgment which were not supported by the record; (2) analyzing the case as a question of the defendants' negligence in interpreting the Louisiana jurisprudence on the assignment of accounts receivable, instead of applying a duty-risk analysis to the intentional and wrongful acts of the defendants to determine whether those acts violated duties owed to Louisiana Bank and Trust; (3) holding that the defendants owed no duty to the creditors of UCT; (4) failing to apply Agrico Chemical Co. v. E.K. Painting, Inc., 432 So.2d 253 (La.1983), which makes clear that the assignment of accounts receivable held by Louisiana Bank and Trust was valid; (5) failing to apply Norton v. Crescent City Ice Mfg. Co., 178 La. 135, 150 So. 855 (1933), that an overruled case is considered as though it has never existed, and the law as construed in the last case is considered as though it has always been the law; and (6) accepting the defendants' argument that Louisiana Bank and Trust's assignment was invalid as a matter of law, when the assignment was clearly valid.
Subsequent to the perfection of this appeal, Louisiana Bank and Trust was declared unsafe and unsound to continue the business of banking. Pursuant to LSA-R.S. 6:391 the Federal Deposit Insurance Corporation (hereinafter FDIC) was appointed receiver of all assets of Louisiana Bank and Trust, including the matters which are the subject of this suit, and by motion filed in this court FDIC was substituted for Louisiana Bank and Trust as the party in interest in this matter. Nevertheless, for purposes of clarity we will refer to plaintiff as Louisiana Bank and Trust.

FACTS
On May 10, 1982, UCT executed a statement of assignment of accounts receivable and general assignment of accounts receivable to Louisiana Bank and Trust. The following day, May 11, 1982, the statement of assignment was filed in the Clerk of Court's office in Iberia Parish.
On November 1, 1982, UCT filed a Chapter 11 reorganization proceeding in the United States Bankruptcy Court for the Western District of Louisiana. The Bankruptcy Court allowed UCT to remain as debtor-in-possession of the estate. As part of their employment as attorneys for the debtor-in-possession, the defendants signed a Special Order of the Bankruptcy Court which provided in part as follows:
"1. He shall exercise general supervision of the operation of the business of the debtor in possession, pursuant to the order of the Court authorizing the debtor to remain in possession and to continue the operation of its business.
2. He shall be responsible for the debtor's in possession strict compliance with the terms of the orders authorizing the debtor to remain in possession of its assets and authorizing the continued operation of the debtor's business and shall be responsible for the debtor's compliance with all provisions of Chapter 11 of the Bankruptcy Code and other applicable law....

*1388 3. He shall take all steps necessary to prevent any depletion of the assets of the debtor during the pendency of these proceedings, and shall promptly notify the Court of any actual or threatened depletion of such assets."
Furthermore, pursuant to the Bankruptcy Court's order authorizing UCT to remain as the debtor-in-possession, UCT was prohibited from using "cash collateral" without first obtaining court approval. Cash collateral is defined in 11 U.S.C.A. Section 363(a) as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents ... and includes the proceeds ... of property" in which a creditor had a security interest.
During the first 90 days of the Chapter 11 Bankruptcy proceeding, acting on advice of counsel that under current jurisprudence Louisiana Bank and Trust did not have a valid security interest in UCT's accounts receivable, and that therefore the receivables did not constitute "cash collateral," UCT collected more than $400,000 in accounts receivable, purportedly assigned to Louisiana Bank and Trust, and used it to meet its daily business needs. Subsequent to the rendition of counsel's advice to UCT, in Agrico the Louisiana Supreme Court reversed the rule of law relative to the perfection of an assignment of receivables on which counsel had based his recommendation to UCT.
Louisiana Bank and Trust ultimately sued defendants to recover the amounts lost by the alleged improper expenditure of accounts receivable.

SUMMARY JUDGMENT
Louisiana Bank & Trust contends that defendants violated their duty to the bank in advising UCT to collect and expend receivables as collected without making an application to the Bankruptcy Court for approval, and thereby deprived the bank of: (1) notice of what was going on; and, (2) an opportunity to litigate the validity of its assignment before the funds involved were dissipated.
In Verrett v. Cameron Telephone Co., 417 So.2d 1319, at 1322 (La.App. 3rd Cir. 1982), writ denied, 422 So.2d 164 (La.1982), we thoroughly reviewed the law relative to the use of a motion for summary judgment:
"[A] motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits show no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. C.C.P. Art. 966. Papers supporting the position of the party moving for summary judgment are to be closely scrutinized, while the opposing papers are to be indulgently treated. A summary judgment is not appropriate when it is based upon affidavits and accompanying pleadings and other documentary evidence to establish subjective facts such as motive, intent, good faith or knowledge. Only when reasonable minds must inevitably concur is a summary judgment warranted and any doubts should be resolved in favor of a trial on the merits.
Nor is summary judgment appropriate as a vehicle for the disposition of a case, the ultimate decision in which will be based on opinion evidence or the judicial determination of subjective facts." (Citations omitted.)
Louisiana Bank & Trust characterized its cause of action against defendants as one which arises from the defendants' failure to fulfill duties imposed by the Bankruptcy Court which were designed for the protection of creditors. They argue that when defendants applied to the Bankruptcy Court for permission to act as attorneys for UCT, they agreed to be bound by the terms of an order entered by the Bankruptcy Court that imposed certain special duties and responsibilities on the lawyers. It contends that UCT's lawyers violated a fiduciary relationship to the Bankruptcy Court and to the creditors, and failed to protect the interests of UCT's creditors when they advised UCT that, based on current jurisprudence, it had no duty to segregate its accounts receivable pending the entry of a court order authorizing expenditure of those funds. In essence, Louisiana Bank & Trust argues that under the terms and *1389 conditions of defendants' employment the scope of their legal duties extended not only to their client, but also to the creditors of UCT. We disagree.
In addressing this issue the learned trial court stated:
"It seems here that the burden sought to be placed by the plaintiff [Louisiana Bank & Trust] upon the debtor's attorneys [defendants] is that of almost one of conflict of interest. One of looking out for the creditor's interest, and I do not believe that that is the duty or responsibilities of the attorneys in representing their clients. It just seems to me that with apparently that much money and that huge of a company involved, that it would have been incumbent upon the creditor to get himself well informed as to how the company was going to continue its business, and what cash flow was available, and to seek injunctive relief from the Bankruptcy Court in the event that it felt that in order to continue the business, the cash flow would be plowed back into the business to pay expenses, et cetera."
We find that this case was ripe for adjudication on a motion for summary judgment. The material undisputed facts were that Mr. Anderson, one of UCT's bankruptcy attorneys, advised UCT during the first 90 days of the bankruptcy proceedings that based on Air Compressors, Inc. v. Big Chief Construction Company, Inc., 367 So.2d 413 (La.App. 1st Cir.1978), writ denied, 369 So.2d 465 (La.1979), Louisiana Bank & Trust did not hold a valid assignment of UCT's accounts receivable and, therefore, UCT could use these accounts in its normal operations, free from the restrictions imposed upon the use of "cash collateral" under Section 363 of the Bankruptcy Code. Furthermore, it was undisputed that the holding of Air Compressors, Inc. was overruled on May 25, 1983, by the Louisiana Supreme Court in the Agrico Chemical decision. The ultimate question for resolution by the trial court then became: as a matter of law, did defendants', as UCT's attorneys, have a duty to protect the interest of Louisiana Bank & Trust?
Loyalty is an essential element of the lawyer's relationship to a client. Rules of Professional Conduct, Art. 16, Rule 1.7. As part of an attorney's duty to his client, an attorney may not represent different interests which are hostile or in conflict with one another. Brasseaux v. Girouard, 214 So.2d 401 (La.App. 3rd Cir.1968), writ denied, 253 La. 60, 216 So.2d 307 (1968). Likewise, attorneys have an obligation to their clients to scrutinize any contract which they advise their clients to execute, and are required to disclose the full import of the instrument and the possible consequences that may arise upon execution of it. Ramp v. St. Paul Fire and Marine Insurance Company, 263 La. 774, 269 So. 2d 239, 244 (1972). Furthermore, the advice an attorney gives is tested against the backdrop of the law as it existed at the time the advice was given and subsequent legislative enactments or judicial decisions do not affect that advice. Smith v. St. Paul Fire and Marine Insurance Company, 366 F.Supp. 1283, 1286 (M.D.La.1973), affirmed, 500 F.2d 1131 (5th Cir.1974).
We are convinced that should we adopt the construction advocated by Louisiana Bank & Trust, it would turn the established concept of an attorney's obligation to his client on its head. Most particularly, as we appreciate Louisiana Bank & Trust's argument, should we find that defendants owed an extended duty to it, we would be allowing Louisiana Bank & Trust to seek damages from an attorney, not its attorney, for the attorney's giving of correct advice to UCT, at least correct at the time the advice was given. We agree with the findings of the trial judge that the Bankruptcy Court order did not deviate to this extent from the concept of duty established in the Rules of Professional Conduct for the relationship between an attorney and his client. Therefore, we conclude that the trial court's dismissal of Louisiana Bank & Trust's claim on a motion for summary judgment was properly entered since there *1390 was no duty on defendants' part which extended to the protection of its client's creditor.
Because we find no legal duty existed on defendants' part, we need not address the remaining assignments of error raised by Louisiana Bank & Trust.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assesed to FDIC.
AFFIRMED.