595 So.2d 825 (1992)
Bob H. SODERQUIST, et ux., Plaintiffs-Appellants,
v.
Michael E. KRAMER, et al., Defendants-Appellees.
No. 23342-CA.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1992.
*826 Kidd & Culpepper by Paul Henry Kidd, Monroe, for plaintiffs-appellants.
Theus, Grisham, Davis & Leigh by David H. Nelson, Monroe, for defendants-appellees.
Before LINDSAY, BROWN and STEWART, JJ.
STEWART, Judge.
Plaintiffs, Bob and Margaret Soderquist, appeal summary judgment which was entered against them and in favor of defendants, Michael E. Kramer and Home Insurance Company. The issue before us is whether a summary judgment may be granted to an attorney defendant in a legal malpractice case where the basis of the motion for summary judgment rests entirely on a settlement agreement (1) which the attorney was not a party to, (2) which he advised his client to sign, and (3) which specifically released the attorney from any claims by the client arising from his representation.

FACTS
Bob Henry Soderquist and Winnsboro State Bank, Inc. (WSB) were parties to litigation involving Franklin Broadcasting Co. which was owned by Soderquist, and to a loan for which WSB and Soderquist were, respectively, creditor and debtor. Soderquist and WSB entered a "settlement and consulting contract" which was executed on or about July 8, 1987 between WSB and Bob H. Soderquist. Michael Kramer, an attorney, represented the Soderquists in the litigation and settlement negotiations with WSB. The settlement agreement contained the following paragraph:
It is agreed that as additional consideration between WSB and Soderquist that they do hereby release any and all claims and rights which they may have against each other and all parties involved in these transactions including but not limited to Eddie Fritts, Franklin Parish Broadcasting, Inc., Michael E. Kramer, Samuel T. Singer, Glen W. Butler, and George Borsari.
The Soderquists filed this suit against their former lawyer, Michael Kramer, and his insurer, Home Insurance Co., for legal malpractice *827 due to and arising from his alleged misrepresentations, and/or acts and omissions, in their litigation with WSB which resulted in the July 8, 1987 settlement agreement.
In their answer, defendants affirmatively set forth the defenses of estoppel, extinguishment of the obligation because of the release in the compromise agreement, compromise, and no right of action.
Defendants, Michael Kramer and Home Insurance Co., moved for summary judgment asserting that, since this suit was filed, the Soderquists have, on two separate occasions, made judicial admissions of the fact that the July 8, 1987 agreement is a valid binding release. Finding that the settlement agreement between WSB and Soderquist was a valid agreement, the trial court signed a judgment of dismissal. The Soderquists appeal. We reverse.

DISCUSSION
Appellees, Kramer and Home Insurance Company, argue that the Soderquists may not now challenge the operation of the release as a bar to this malpractice action because of their judicial admissions of the validity of the settlement agreement which contains the release.
According to the briefs, the Soderquists filed suit on April 8, 1988 against WSB, claiming that WSB had breached the July 8, 1987 settlement agreement. Also, on April 8, 1988, the Soderquists filed the instant malpractice action against Michael Kramer and his insurer. Appellees argue that the Soderquists later moved for partial summary judgment against WSB, requesting that the trial court uphold the July 1987 settlement agreement and find that WSB had breached the agreement. Appellees assert that the trial court held that the agreement was valid and binding in the suit against WSB, but denied the Soderquists' motion and granted a motion for summary judgment in favor of WSB. The Soderquists did not appeal that judgment.
Appellees argue that the instant summary judgment was correct, in part because the Soderquists' suit against WSB, and their motion for partial summary judgment against WSB, were judicial admissions of the validity of the settlement agreement.
Louisiana law recognizes that it is sometimes necessary for parties to maintain alternative, inconsistent, and even mutually exclusive positions in the course of litigation. Braud v. New England Insurance Co., 576 So.2d 466, 469 (La.1991); LSA-C.C.P. Art. 892. Thus, the mere fact that the Soderquists' legal malpractice claim against Kramer may be inconsistent with the Soderquists' position vis-a-vis WSB does not prevent Soderquist from asserting his claim against Kramer as a separate suit. See Braud, supra at 470.
The validity of the settlement agreement as it relates to the rights of Soderquist and WSB is not an issue before this court. The pivotal issue is whether the summary judgment statute, LSA-C.C.P. Art. 966, may be used to grant summary judgment in favor of Kramer under the facts and circumstances of this case.
The purpose of LSA-C.C.P. Art. 966 is to enable the court to expedite the decision of a case where it has been established that there is no genuine issue of material fact present. Howard v. General Motors Acceptance Corp., 324 So.2d 834 (La.App.2d Cir.1975), cited in Analysts Inc. v. McNamara, 504 So.2d 898 (La.App. 1st Cir.1987). Use of summary judgment, however, must not be unbridled as it denies the adverse party his day in court. Simon v. Fasig-Tipton Co. of New York, 524 So.2d 788, 791 (La.App. 3d Cir.1988), writ denied, 525 So.2d 1048, 1049 (La.1988). A summary judgment is no substitute for a trial on the merits. Swindle v. Haughton Wood Co., Inc., 458 So.2d 992 (La.App.2d Cir.1984); Analysts Inc., supra.
On a motion for summary judgment, the court must first determine whether the supporting documents presented by the moving party are sufficient to resolve all material fact issues. If they are not sufficient, summary judgment must be denied. Only if they are sufficient does the burden shift to the opposing party to present evidence showing that material *828 facts are still at issue; only at this point may he no longer rest on the allegations and denials contained in his pleadings.
Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). The mover has the burden of proving that there are no genuine issues of material fact. This burden is a great one. Swindle, supra; Williams v. Airport Appliance & Floor Covering, Inc., 445 So.2d 764, 770 (La. App.2d Cir.1984), writ denied, 447 So.2d 1070, 1071 (La.1984). Only when reasonable minds must inevitably concur is a summary judgment warranted. Swindle and Williams, both supra.
Summary judgment cannot be granted once the judge detects the existence of a disputed material fact.
A fact is material if its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Facts are "material" if they potentially insure or preclude recovery, affect the litigants' ultimate success or determine the outcome of a legal dispute.
Swindle, supra; see also Sanders v. City of Blanchard, 438 So.2d 714 (La.App.2d Cir.1983). All doubt concerning dispute as to a material issue of fact must be resolved against granting the motion and in favor of trial on the merits. Summary judgment may not be used as a substitute for trial. If there is any doubt concerning an absence of dispute as to a material fact, a motion for summary judgment must be denied and the matter resolved in favor of trial on the merits. McCoy v. Physicians & Surgeons Hosp., 452 So.2d 308 (La.App.2d Cir.1984), writ denied, 457 So.2d 1194, 1195 (La.1984); See also Odom v. Hooper, 273 So.2d 510 (La.1973); Simon and Swindle, both supra.
The court should not seek to determine whether it is likely the mover will prevail on the merits but rather whether there is an issue of material fact. Oller v. Sharp Electric, Inc., 451 So.2d 1235 (La.App. 4th Cir.1984), writ denied, 457 So.2d 1194 (La. 1984). The weighing of conflicting evidence on material fact has no place in a summary procedure. Simon, supra.
The undisputed allegations in the petition reveal the following scenario:
Sometime after Christmas 1986, the Soderquists employed Kramer to represent them in their litigation with WSB. On February 26, 1987, unbeknownst to the Soderquists, WSB instituted a suit to have a receiver appointed for Franklin Parish Broadcasting, Inc. Service of the petition was made upon Kramer as agent for Franklin Parish Broadcasting, Inc. During the course of a June 11, 1987 trial, WSB seized, under a writ of fieri facias, all of the assets of Franklin Parish Broadcasting, Inc. In July 1987, Bob Soderquist and WSB executed a settlement agreement to permit dismissal of the Chapter 11 Reorganization petition of Franklin Parish Broadcasting, Inc., and release Kramer, and others from all liability for claims against them. According to the pleadings, this agreement was executed by Bob Soderquist under duress and without the benefit of effective counsel. Kramer advised the Soderquists to execute the settlement agreement because it was the best deal that could be made under the circumstances.[1]
In opposition to the motion for summary judgment, plaintiff contended unsuccessfully that he could not release his own attorney for acts of malpractice in a document primarily designed to settle the differences between two parties in litigation, when his own attorney advised him on the document *829 and, in fact, was the notary signing the document.
In its reasons for judgment, the trial court stated it had previously upheld this agreement and had sustained a motion for summary judgment based upon the document. The court noted that Soderquist himself had judicially admitted the validity of this agreement. The court stated it is very clear that both Winnsboro State Bank and Trust Company and Soderquist released each other and "all parties involved" from all claims and rights that they had at the time the document was signed on July 8, 1987. It concluded by saying that by the clear and unambiguous language of the release, both Soderquist and WSB released "any and all claims which they may have" against Kramer.
At first glance, it might appear that a release contained in a valid settlement agreement, in and of itself, resolves all issues of material fact. However, Kramer's motion for summary judgment rests on an agreement which he advised the Soderquists to sign while acting as their attorney. It is evident from the nature of the release contained in the settlement agreement that Kramer's interests were adverse to those of the Soderquists. Therefore, inherent in our review of the trial court's application of LSA-C.C.P. Art. 966, is a consideration of the effect of the fiduciary relationship between attorney and client under these unique facts and circumstances. Due to the res nova nature of this issue, we have found no cases directly on point.
The Louisiana Rules of Professional Conduct (formerly the Code of Professional Responsibility) have the force and effect of substantive law. Gulf Wide Towing v. F.E. Wright (UK) Ltd., 554 So.2d 1347, 1354 (La.App. 1st Cir.1989); City of Baton Rouge v. Stauffer Chemical Co., 500 So.2d 397 (La.1987); Succession of Wallace, 574 So.2d 348, 350 (La.1991). The Rules of Professional Conduct, set forth by virtue of the court's power and responsibility to exercise its judicial authority, override legislative acts which tend to impede or frustrate that authority. See Succession of Wallace, supra; Scott v. Noel, 506 So.2d 1313 (La.App.2d Cir.1987). A statute may have no effect in so far as it is in conflict with these rules governing attorneys' conduct. Scott, supra. The Louisiana Supreme Court has stated that
The disciplinary rules are mandatory rules that provide the minimum level of conduct to which an attorney must conform without being subject to disciplinary action. When an attorney enters into a contract with his client in direct and flagrant violation of a disciplinary rule and a subsequent civil action raises the issue of enforcement (or annulment) of the contract, this court, in order to preserve the integrity of its inherent judicial power, should prohibit the enforcement of the contract which directly contravenes the Code adopted by this court to regulate the practice of law. Otherwise, this court's authority to regulate attorney conduct will be substantially undermined.
Succession of Cloud, 530 So.2d 1146, 1150 (La.1988) (emphasis added) (citation omitted). It logically follows that art. 966 may not be used in a manner which allows an attorney to enforce or benefit from an agreement which contravenes the rules adopted by the supreme court which regulate the practice of law.
The relevant Rules of Professional Conduct provide as follows (emphasis added):
Rule 1.7. Conflict of interest: General rule
(b) A lawyer shall not represent a client if the representation of that client may be materially limited ... by the lawyer's own interests, unless:
(1) The lawyer reasonably believes the representation will not be adversely affected; and

(2) The client consents after consultation....
Rule 1.8. Conflict of interest: Prohibited transactions
As a general principle, all transactions between client and lawyer should be fair and reasonable to the client. Furthermore, a lawyer may not exploit his representation of a client or information relating *830 to the representation to the client's disadvantage. Examples of violations include, but are not limited to, the following:
(h) A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

. . . .
The relationship between an attorney and his client is frequently characterized as a fiduciary relationship. Plaquemines Parish Commission Council v. Delta Development Co., 502 So.2d 1034, 1040 (La. 1987).
The law leaves no uncertainty in defining the character of duty which an attorney owes to his client. The relation of attorney and client is more than a contract. It superinduces a trust status of the highest order and devolves upon the attorney the imperative duty of dealing with the client only on the basis of the strictest fidelity and honor.
Searcy v. Novo, 188 So. 490 (La.App.2d Cir.1939), cited with approval in Plaquemines Parish, supra.
The jurisprudence which discusses the attorney's fiduciary duty further details the action which an attorney must take when his interest conflicts with that of his client:
The relationship between an attorney and his client is one, of necessity, of mutual confidence and trust. In situations where the attorney's interest is adverse to that of his client, the attorney's duty requires him to disclose his adverse interest.
Plaquemines Parish, supra (citations omitted). Attorneys have an obligation to their clients to scrutinize any contract which they advise their clients to execute, and are required to disclose the full import of the instrument and the possible consequences that may arise upon execution of it. Louisiana Bank & Trust Co. v. Anderson, 526 So.2d 1386 (La.App. 3d Cir. 1988).
The dominant characteristic of a fiduciary relationship is the confidence reposed by one in the other and [a person] occupying such a relationship cannot further his own interest and enjoy the fruits of an advantage taken of such a relationship. He must make a full disclosure of all material facts surrounding the transaction that might affect the decision of his principals.
Plaquemines Parish, supra (citation omitted). The duty imposed on a fiduciary embraces the obligation to render a full and fair disclosure to the beneficiary of all facts which materially affect his rights and interest. Plaquemines Parish, supra, (citations omitted). See also, Louisiana Bank & Trust Co., supra.
The record before us is sparse and discloses no information, other than the testimony by deposition of Bob Soderquist, regarding whether Kramer advised him of the conflicting interest attendant to the release clause of the agreement. In that testimony, Soderquist states that when he asked Kramer about the release clause, Kramer advised him that it was a standard paragraph, and provided no additional information about it.
Given the nature of the fiduciary relationship involved, and the disputes between these parties regarding that relationship, the resolution of the narrow but material issue presented herein must turn on the facts and circumstances attendant to the agreement and on the nature of the parties' attorney-client relationship.
This factual inquiry is not for the purpose of adducing parol evidence to determine the true intent of the parties to the settlement agreement. Rather, the inquiry is necessary so that the court may assess the reasonableness of the attorney's disclosure to Soderquist of his adverse interest in the release, and whether Soderquist had benefit of independent counsel or was otherwise aware of the need therefor with regard to the release. The use of C.C.P. art. 966 to preclude this factual inquiry *831 would substantially undermine the court's authority to regulate attorney conduct. Accordingly, we find that, because of the substantive nature of the Rules of Professional Conduct and the jurisprudence detailing the fiduciary duty herein involved, the grant of summary judgment was improper as a matter of law.
Moreover, we find that, because the instant action embraces the attorney-client relationship between Kramer and Bob Soderquist, as well as the court's responsibility to regulate Kramer's conduct in the practice of law, there exist genuine issues of material fact regarding the circumstances under which the release was obtained.

CONCLUSION
By this opinion we find only that the trial court's decision to sustain defendants' motion for summary judgment is incorrect as a matter of law and must be reversed; we make no findings as to the merits of this cause. The matter is remanded for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] Paragraph 34 of the petition alleges the following (emphasis added):

In July 1987, Bob Soderquist, executed a compromise agreement to permit dismissal of a Chapter 11 bankruptcy proceeding and relieve Edward O. Fritts, Franklin Parish Broadcasting Inc., and Michael Kramer, among others, from all liability or claims against them. This agreement was executed under duress on the part of Bob Soderquist without the benefit of effective counsel, and that Kramer advised them to execute the compromise agreement because it was the best deal that could be made under the circumstances.
In the answer on behalf of Michael Lee Kramer and Home Insurance Company, paragraph 34 simply states:
"On information and belief. Article 34 is admitted."