United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 29, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-30583

AMERICAN RELIABLE INSURANCE CO.,

Plaintiff-Appellant,

versus

BORIS NAVRATIL; NAVRATIL, HARDY,
BOURGEOIS LLP; CONTINENTAL CASUALTY CO.,

Defendants-Appellees.

--------------------
Appeal from the United States District Court
for the Western District of Louisiana

--------------------

Before JONES, Chief Judge, WIENER and PRADO, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant American Reliable Insurance Company ("ARIC") appeals the district court's summary judgment dismissing ARIC's malpractice claim against Defendant-Appellee, Boris Navratil, a lawyer whom ARIC had retained to defend it and its insured against a third-party's lawsuit in state court. As the state law question on which the instant case turns is neither covered by statute nor yet addressed by the highest court of Louisiana, the district court had to make an "Erie guess,"[1] as must

_____

[1] See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

we, <u>de novo</u>, on appeal.[2]  We disagree with the district court's determination that Louisiana case law mandates dismissal of ARIC's claim on grounds of equitable estoppel.  We therefore reverse the district court's summary judgment and remand for further consistent proceedings.

## I. FACTS AND PROCEEDINGS

ARIC retained Navratil to defend it and its insured, Eli Prudhomme, in a state court lawsuit.  The action proceeded through a full merits trial that resulted in a jury verdict for the plaintiff, with damages assessed against Prudhomme and ARIC <u>in solido</u> for the policy limits of $25,000, and additional damages against Prudhomme only for $420,198.30.  Following the verdict, Navratil wrote to ARIC, expressing his professional opinion that there were several legal arguments to be made on appeal that might reduce the quantum of the judgment or change the allocation of damages, and recommending an appeal.  Navratil acknowledged in his letter that, given ARIC's $25,000 policy limit and the unlikelihood of a complete reversal, an appeal probably would not directly benefit ARIC.  Navratil went on to advise ARIC that it had a duty under state law to appeal the adverse judgment against its insured, even if ARIC would not directly benefit from an appeal.  Even

---

[2] <u>See</u> <u>Salve Regina College v. Russell</u>, 499 U.S. 225, 239-40 (1991).

2

before the verdict became a final judgment, however, ARIC terminated Navratil's representation.

Shortly thereafter, ARIC settled the state court case with the plaintiff for $550,000, an amount that was greater than the jury award but apparently less than the total anticipated judgment against Prudhomme.[3] ARIC then filed this diversity action against Navratil in the district court, alleging malpractice in his handling of the Prudhomme case. Both sides filed motions for summary judgment.

The district court granted Navratil's motion and dismissed ARIC's malpractice claim with prejudice. In the absence of a Louisiana Supreme Court case on point or any state statutory authority, the district court expressly relied on Gross v. Pieno,[4] a decision of one among Louisiana's five intermediate courts of appeal, to hold as a matter of state law that ARIC's failure to appeal the jury verdict before voluntarily settling the state court case barred ARIC's suit against Navratil for malpractice in his handling of that case. ARIC appeals the district court's summary judgment.

---

[3] Prudhomme's interest in the matter was severed by an assignment, release, and consent agreement with ARIC, which he signed in exchange for ARIC's assumption of liability for the full amount of the jury award.

[4] 04-820 (La. App. 5 Cir. 12/28/04); 892 So.2d 662.

## II. STANDARD OF REVIEW

We review <u>de novo</u> a district court's grant of summary judgment.[5] We also review <u>de novo</u> a district court's determination of state law, granting no deference to its interpretation.[6]

## III. ANALYSIS

The district court, sitting in diversity, made an "<u>Erie</u> guess" in its effort to determine the applicable state law. In the absence of any controlling state statute or relevant decision of the Supreme Court of Louisiana, the district court appropriately turned to rulings of state appeal courts, here relying almost exclusively on the decision of one in <u>Pieno</u>.[7] We view as overly broad, however, the district court's reading of the <u>Pieno</u> decision as establishing an unconditional <u>per se</u> rule in Louisiana to the effect that a client's failure to pursue an appeal from an adverse

---

[5] <u>Armstrong v. City of Dallas</u>, 997 F.2d 62, 65 (5th Cir. 1993).

[6] <u>Salve Regina College</u>, 499 U.S. at 239-40.

[7] <u>See</u> <u>Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.</u>, 290 F.3d 303, 317 (5th Cir. 2002) (decisions of the intermediate state courts are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise"). We note that the Louisiana Supreme Court declined review in <u>Pieno</u>, as well as in the <u>Murphy</u> case on which <u>Pieno</u> relied. <u>Gross v. Pieno</u>, 2005-0218 (La. 04/22/05); 899 So.2d 582 (unpublished) (denying writ); <u>Murphy v. Gilsbar, Inc.</u>, 2002-0205 (La. App. 1 Cir. 12/31/02); 834 So.2d 669, writ denied, 2003-0676 (La. 05/30/03); 845 So.2d 1057.

judgment absolutely bars such a client from bringing a malpractice suit against the attorney.  We are instead convinced that were the Supreme Court of Louisiana to decide this as a case of first impression today, it would distinguish <u>Pieno</u> and hold that ARIC's settlement of the underlying case did not have the preclusive effect of barring the client from bringing an independent action for legal malpractice.  Stated differently, we do not believe that the highest court of the State would establish a <u>per</u> <u>se</u> bar that would <u>ipso</u> <u>facto</u> block the bringing of such a suit in every claim of legal malpractice.

<u>A</u>. Pieno<u> Does Not Require Dismissal In This Case</u>

In <u>Pieno</u>, the attorney for the plaintiffs in the underlying lawsuit failed to take any steps in the prosecution of that action for three years, after which the defendants successfully filed a motion for summary judgment resulting in dismissal of the case on grounds of abandonment.  Shortly thereafter, the plaintiffs' attorney filed a motion to set aside the dismissal and requested a hearing, which request was granted.  While the hearing was pending, the plaintiffs' attorney engaged in settlement negotiations with the defendants, but before he could proceed further he was fired by the plaintiffs.  They proceeded to settle their lawsuit directly with the defendants, then sued their former attorney for malpractice.  In defending the malpractice claim, the lawyer argued

that, because his former clients had settled the matter without allowing the hearing to take place on the issue of abandonment, they were equitably estopped from pursuing a malpractice claim against him. The state appeal court agreed, stating that "the plaintiffs, by failing to participate in the hearing on the abandonment motion, precluded the opportunity to litigate the abandonment issue."[8] The appeal court reasoned that the trial court had been denied the opportunity to consider the fired attorney's legal explanation for not taking action on the case, or to consider whether the defendants, who were willing to settle while reconsideration was pending, might have waived the issue of abandonment.[9]

This case is readily distinguished from Pieno. Unlike the attorney in Pieno, who was deprived of any opportunity to absolve himself of fault on the liminal issue of abandonment, Navratil proceeded all the way through a merits jury trial to a resounding defeat and a large jury award against his clients. The proceedings in Pieno were cut short by the clients' settlement before the pre-trial hearing on abandonment could even be held, thus making it impossible for any court to determine whether the attorney had in

---

[8] 892 So.2d at 665.

[9] Id. at 665-66.

6

fact caused any harm to his clients. In stark contrast, any professional malpractice Navratil might have committed in his handling of Prudhomme's case all the way to verdict can be determined with certainty from the record of the extensive state court proceedings. Undoubtedly, that record is much more fully developed and extensive than was the record in <u>Pieno</u>, which could have contained nothing substantially more than the three-year-old original petition and some preliminary pleadings filed shortly before summary judgment.

Navratil argues that this case is indistinguishable from <u>Pieno</u> because there is no substantive difference between summary judgments and judgments rendered after trial; both have the effect of adjudicating the rights of the parties, and if not appealed, become final, definitive, and binding judgments. The logic of this argument is flawed and misses the point. The appeal court in <u>Pieno</u> recognized that the proceedings in the clients' case had <u>not</u> definitively ended, whether by summary judgment or trial verdict, when the clients settled. At the heart of the decision in <u>Pieno</u> was the state appeal court's view that it was the clients' settlement that <u>terminated the litigation</u>; it was not the adverse summary judgment, which might have been set aside following the hearing that would have taken place but for the clients'

7

settlement.[10]   The issue of abandonment was still before the state trial court and the proceedings were still open.   Notably, there was as yet no merits judgment.   Contrary to the suggestion of Navratil's argument, there is no indication that the <u>Pieno</u> court would have applied equitable estoppel to bar a malpractice action against the attorney if the judgment in that case had been final.

The state appellate court in <u>Pieno</u> was most concerned with the fact that there had been no hearing at all on the issue of abandonment; that because of the client's independent settlement, the attorney was denied the opportunity to remedy any deficiency in his representation of the client, which in fact might not have been deficient at all.   As the <u>Pieno</u> trial court remarked, "we'll never know because the Grosses decided to take a check rather than attend the [h]earing."[11]   Not so here:   Navratil's entire performance as defense counsel for ARIC and Prudhomme can be evaluated from the record of the state trial court proceedings, which were not cut short by a premature settlement with the opposing party but went all the way to a final judgment on a jury verdict.   There is a palpable difference between what was important in <u>Pieno</u> and what

---

[10] <u>See</u> <u>id.</u> at 664-65 ("the original judgment of abandonment was set for a hearing. ... [P]laintiffs chose not to move forward with that hearing. ... [I]t was this settlement that terminated the litigation in the underlying suit.").

[11] <u>Id.</u> at 665.

happened in this case. We conclude that the district court read Pieno too broadly in extending its holding to this case.[12]

B. Equitable Estoppel

A federal court sitting in diversity must distinguish intermediate state appellate court precedent, especially when (as here) it is sparse, before predicting how the state's highest court would rule if presented with the same facts for the first time.[13] As our review of the district court's interpretation of state law is de novo, our contrary Erie-guess will supplant that of the district court.[14] We do not believe that the Supreme Court of Louisiana, or even the intermediate appellate court that decided Pieno, would apply equitable estoppel under the instant facts. As we are not convinced that the Supreme Court of Louisiana would

---

[12] We note that Soderquist v. Kramer, 595 So.2d 825 (La. App. 2 Cir. 1992), on which ARIC relies, is equally distinguishable: That case involved a settlement agreement signed at the attorney's urging which purported to release the attorney from any claim of malpractice; and the appeal court's decision was grounded in the Louisiana Rules of Professional Conduct. Soderquist has no bearing on this case.

[13] See Hall v. White, Getgey, Meyer & Co., LPA, 347 F.3d 576, 586-87 (5th Cir. 2003) (rejecting party's reliance on state court decision that was distinguishable from the facts at issue, predicting that the state Supreme Court would not apply it to the facts presented).

[14] See Salve Regina College, 499 U.S. at 239-40 (emphasizing that appellate review of a district court's determination of state law is de novo and is without any deference to the district court).

9

require a client in ARIC's shoes to appeal an adverse judgment in a fully litigated case as a suspensive condition (condition precedent) to suing the attorney who handled and tried that very case, all the way to verdict, we reverse the summary judgment dismissal of ARIC's malpractice suit against Navratil.

Although as a general principle, a client has a duty to mitigate damages caused by its attorney's malpractice, such a duty cannot require the client to undertake measures that are unreasonable, impractical, or disproportionately expensive considering all of the circumstances.[15] ARIC rightly notes that interpreting Pieno to require a client to take and pursue an appeal as a prerequisite to suing its attorney for malpractice would be tantamount to forcing the client to file and pursue such an appeal all the way to the United States Supreme Court, at great expense to both the client and the courts, regardless of the merits of the appeal. Moreover, such an immutable rule could cause the client to miss a favorable but fleeting opportunity to make a financially favorable settlement; and settlement may often be a better method of damage mitigation than is appeal. We cannot imagine that Louisiana's highest court would impose such a rigid, blanket requirement; neither do we read that state's sparse appellate

---

[15] See 3 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 20.21 (2006).

jurisprudence as authority, much less a mandate, for federal courts sitting in diversity to do so.

## IV. CONCLUSION

In summary, ARIC was forced to decide between appealing the adverse judgment in the hope of reducing or eliminating the award —— a seemingly risky and speculative course —— and effectuating a reasonable settlement with the plaintiff while the proverbial iron was hot.  We are aware of no Louisiana law that elevates the former course of pursuing mitigation over the latter.  In the absence of any direct guidance on this issue from the Supreme Court of Louisiana (and little if any from the State's intermediate courts of appeal), we hold that ARIC's decision not to pursue an appeal under these circumstances does not equitably estop it from prosecuting its malpractice action against Navratil.  We therefore reverse the district court's summary judgment of dismissal of ARIC's action and remand this case to that court for further proceedings consistent with this opinion.  In so doing, we neither express nor imply any view on the merits of ARIC's legal malpractice claim against Navratil.

REVERSED and REMANDED.