STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-950

ADRIENNE PATOUT SMITH

VERSUS

ROY PATOUT

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 68833
HONORABLE EDWARD LEONARD JR., DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Elizabeth A. Pickett, Judges.

REVERSED AND REMANDED.

Cooks, J., concurs in part and dissents in part and assigns reasons.


Joel Edward Gooch
Allen & Gooch
P. O. Drawer 3768
Lafayette, LA 70502-3768
(337) 291-1210
Counsel for Defendant-Appellee:
 Porteus Richard Burke

Julian Louis Gibbens III
Doucet-Speer and Gibbens, P.L.C.
P. O. Box 4303
Lafayette, LA 70502-4303
(337) 232-0405
Counsel for Defendant-Appellant:
 Roy Patout

**Pickett, Judge.**

The plaintiff-in-reconvention, Roy Patout, appeals a judgment of the trial court granting the motion for summary judgment filed by the defendant-in-reconvention, Porteous Burke.

**STATEMENT OF THE CASE**

Members of the Patout family, including Adrienne Patout Smith and Roy Patout, inherited land in St. Martin and Iberia parishes. In 1992, the Patouts discovered that the City of New Iberia had been dumping trash on their land since 1970. On January 23, 1992, Roy Patout executed a Power of Attorney in favor of Mrs. Smith, his niece, appointing her as his representative in any legal action against the City of New Iberia. Mrs. Smith pursued this matter on her behalf and on behalf of her mother and siblings. She hired Porteous Burke to represent the interests of all the Patout heirs and to file suit against the City of New Iberia.

In May 2004, the suit was settled. Mr. Burke disbursed the settlement proceeds to Mrs. Smith after deducting his contingency fee and costs of the litigation. Mrs. Smith was then responsible for splitting the proceeds among the rest of her relatives on whose behalf she had acted. After discussions with Mrs. Smith, Mr. Patout refused to accept the payment $27,373.00 that she offered him. Mrs. Smith then filed a suit for declaratory judgment, seeking a judicial determination that the payment offered to Mr. Patout was a "fair and just" settlement of his claims as contemplated by the Power of Attorney. Mr. Patout answered the suit and filed a Reconventional Demand against Mrs. Smith and made a third-party demand against Mr. Burke. He alleged that Mrs. Smith acted fraudulently in settling the claims against the City of New Iberia and failed to provide an accounting of the proceeds of the settlement. Mr

1

Patout alleged that Mr. Burke failed to safeguard the proceeds of the settlement, failed to insure proper distribution of the settlement proceeds, failed to provide an accounting of the proceeds of the settlement, and failed to notify Mr. Patout, as his client, of the potential conflict of interest caused by his representation of other landowners similarly situated.

Mrs. Smith and Mr. Burke filed Motions for Summary Judgment, seeking to have Mr. Patout's claims against them dismissed. On February 8, 2006, the court held a hearing on the motions. The trial court denied Mrs. Smith's Motion for Summary Judgment and granted Mr. Burke's Motion for Summary Judgment. The trial court signed a judgment dismissing Mr. Patout's third-party demand against Mr. Burke on February 27, 2006. Mr. Patout now appeals.

## ASSIGNMENT OF ERROR

Mr. Patout asserts that the trial court erred in granting summary judgment in favor of Mr. Burke.

## DISCUSSION

Appellate courts review summary judgments de novo, applying the same criteria as the trial court in deciding whether or not summary judgment should be granted. *Schroeder v. Bd. of Supervisors*, 591 So.2d 342 (La.1991). Concerning the burden of proof in summary judgment procedure, La.Code Civ.P. art. 966(C)(2) provides:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support

2

sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

In this case, Mr. Patout bears the burden of proof. The movant, Mr. Burke, must only show the absence of factual support for an essential element of Mr. Patout's claim. This claim against Mr. Burke, an attorney, is a legal malpractice claim. "To establish a claim for legal malpractice, a plaintiff must prove: 1) the existence of an attorney-client relationship; 2) negligent representation by the attorney; and 3) loss caused by that negligence." *Costello v. Hardy*, 03-1146, p. 9 (La. 1/21/04), 864 So.2d 129, 138.

Mr. Patout relies heavily on the case of *In re Hoffman*, 03-2499 (La. 9/9/04), 883 So.2d 425. In that attorney discipline matter, an attorney represented one of three siblings who contested an uncle's will. When the attorneys for the estate indicated they would prefer to negotiate with all the decedent's nieces and nephews, the client convinced his brother and sister to sign an affidavit authorizing the attorney to negotiate and settle their claims on their behalf. The attorney never communicated with the brother and sister. When the claims against the estate were settled, the brother and sister objected to the disbursement of the funds. The attorney explained that he was disbursing the funds as directed by their brother.

The supreme court found that the attorney had failed to fully explain the potential conflict caused by his representation of all three siblings and had failed to obtain consent in making an aggregate settlement of multiple clients' claims. The primary difference is, in the matter before us, Mr. Patout signed a mandate allowing Mrs. Smith to settle his claims and distribute the proceeds, whereas in *Hoffman*, 883 So.2d 425, the non-client siblings signed an affidavit authorizing the attorney to settle their claims and distribute the proceeds. Furthermore, while the case does discuss an

3

issue of attorney misconduct which bears some resemblance to the one before this court, it does not resolve the issue of civil tort liability.

There is an attorney-client relationship. While Mr. Burke was retained only by Mrs. Smith, he was retained by her to represent the interests of all of the Patout heirs whom Mrs. Smith represented. Mr. Burke signed several documents as the attorney for Mr. Patout. Mr. Burke claims that since there was no privity of contract between him and Mr. Patout, there cannot be an attorney-client relationship. Clearly, though, Mr. Burke agreed to represent the interests of Mr. Patout in this matter, and he owed a fiduciary duty to him.

Having determined that an attorney-client relationship existed, we must determine whether there is sufficient evidence to determine if Mr. Burke committed negligence in his representation of Mr. Patout. We find no evidence to support Mr. Patout's contention that Mr. Burke failed to safeguard the proceeds of the settlement or to insure proper distribution of the proceeds of the settlement. In fact, the mandate signed by Mr. Patout in favor of Mrs. Smith clearly authorizes Mrs. Smith to distribute the proceeds of the settlement. We also cannot find any evidence to support the claim that Mr. Burke had a duty to notify Mr. Burke of any potential conflicts of interest. Thus, we only have left to determine if Mr. Burke was negligent in failing to provide an accounting to Mr. Patout.

We find Rule 1.15(d) of the Louisiana State Bar Association's Rules of Professional Conduct instructive in determining if Mr. Burke had a duty to provide an accounting to Mr. Patout. This rule states:

> Upon receiving funds or other property in which a client or third person
> has an interest, a lawyer shall promptly notify the client or third person.
> For purposes of this rule, the third person's interest shall be one of
> which the lawyer has actual knowledge, and shall be limited to a

4

statutory lien or privilege, a final judgment addressing disposition of those funds or property, or a written agreement by the client or the lawyer on behalf of the client guaranteeing payment out of those funds or property. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

By the terms of this rule, Mr. Burke had a professional duty to render an accounting to Mr. Patout upon request. This would be true even if Mr. Patout was not a client, as he would then be a third party about whom Mr. Burke had actual knowledge and who had a written agreement with Mrs. Smith guaranteeing payment out of the proceeds of the settlement. In any event, there is a genuine issue of material fact regarding whether Mr. Patout was informed of the amount of the settlement. <u>Mr. Patout alleges in an affidavit that he has not been informed of the amount of the settlement by either Mr. Burke or Mrs. Smith, though Mrs. Smith claims in an affidavit that he has been informed.</u> The Rules of Professional Conduct have the force and effect of substantive law. *Succession of Wallace*, 574 So.2d 348 (La.1991). Thus, summary judgment is inappropriate in this case. Accordingly, the judgment of the trial court is reversed. This matter is remanded to the trial court for further proceedings. Costs of this appeal are taxed against Mr. Burke.

**REVERSED AND REMANDED.**

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

06-950

ADRIENNE PATOUT SMITH

VERSUS

ROY PATOUT

**COOKS, J., concurs, in part, and dissents, in part.**

I agree with that portion of the majority opinion finding there was an attorney-client relationship between Porteus Burke and Roy Patout; and, as a result, Mr. Burke has, at a minimum, a fiduciary obligation to provide his client with an accounting of the proceeds received in settlement of his suit against the City of Iberia. Apart from this ruling, the majority opinion is confusing at best. It recites that the "judgment of the trial court is reversed," after noting summary judgment is *inappropriate* in this case, and remands the matter to the trial court for further proceedings. Yet, the majority opinion addresses and affirmatively rules on the issues it acknowledges are inappropriate for summary disposition. In doing so, the majority performs a "sufficiency of evidence" review and concludes there is "no evidence to support Mr. Patout's contention that Mr. Burke failed to safeguard the proceeds of the settlement or to insure proper distribution of the proceeds of the settlement" and no "evidence to support a claim that Mr. Burke had a duty to notify...[Mr. Patout] of any potential conflicts of interest."

The majority opinion does not recite the relevant facts in this case which are crucial to a full understanding. Attorney Porteus Burke was hired to represent the Estate of Gaston Patout (which includes Ms. Smith, her mother and several siblings), Roy Patout (her uncle) and Squirrel Run Development Group in a suit against the City of New Iberia. Roy Patout was one of the named plaintiffs. Mr. Burke

represented Mr. Patout, as his attorney, before this court and the supreme court on numerous occasions when he appeared to argue at different stages of this case. *See Estate of Gaston Patout and Roy Patout v. City of New Iberia*, 01-0151 (La.App. 3 Cir. 4/3/02), 813 So.2d 1248, *writ denied,* 02-1172 (La.6/21/02), 819 So.2d 335 (which details the legal journey of this case). The case proceeded in the courts for thirteen years before it was settled in May 2004. The Patout portion allegedly was one million dollars. The settlement documents do not appear in the record. Mr. Burke and Ms. Smith insist that the provision in the settlement agreement obligates them to maintain the "confidentiality of its contents" and prohibits them from fully disclosing its contents or making the settlement documents available for Mr. Roy Patout's inspection and review. Although Mr. Burke was well aware he represented all the Patout owners, Ms. Smith apparently was the only Patout family member who signed the documents. The settlement check, which also does not appear in the record, either did not bear the names of all of the Patouts or Ms. Smith signed the check in their stead, along with Squirrel Run's representative. When he received the proceeds, Mr. Burke took his one-third or $333,000 from the Patout family portion and forwarded the remainder to Ms. Smith. She disbursed $11,000 to her mother and $5,000 each to her siblings, deducted her expenses of $96,000 and kept ***$515,000*** for herself. She offered her uncle, Mr. Patout, $15,000. When he got a lawyer, she offered him $27,000.

When Mr. Patout learned of the settlement, he began calling Ms. Smith. When he could not receive any information concerning the case, he began calling *his* lawyer, Mr. Burke. Rather than discuss the case with Mr. Patout, Mr. Burke, in turn, notified Ms. Smith. Mr. Patout eventually hired an attorney to represent his interest in the proceeds. Correspondence between the parties appears in the record. Mr. Burke was copied with all correspondence between Ms. Smith and Mr. Patout and

2

was well aware of the conflict between them. What is glaringly apparent is that Mr. Burke failed to communicate with any of the Patout owners, other than Ms. Smith, regarding the case, the settlement and the disbursement of the proceeds. He now seeks to avoid his fiduciary duty to the other Patout clients by hiding behind Ms. Smith's Power of Attorney.

The majority correctly recognizes Mr. Patout's claim is one sounding in legal malpractice. However, the majority narrowly defines "negligent representation" by focusing on whether Mr. Burke was *competent* in his representation of the Patout family interests and whether he negotiated an appropriate settlement. There is no dispute that Mr. Burke did a fine job in obtaining the funds from the City of New Iberia and Mr. Patout does not allege Mr. Burke is incompetent, or was negligent in his handling of the principal case, or failed to negotiate an appropriate *in globo* settlement. Rather, Mr. Patout alleges Mr. Burke breached his fiduciary duty to insure fair distribution and delivery of his share of the settlement proceeds to him. Paragraphs Five and Nine of Mr. Patout's reconventional demand clearly establishes the basis for his claim in tort based on a violation of the ethical standards of conduct:

> Porteous R. Burke was the attorney of record for both Adrienne Patout and Roy Patout, along with all of the other owners in division of the aforementioned property, in their claim for damages. The litigation was settled in May of 2004, and proceeds of the settlement were forwarded to Adrienne Patout Smith and Porteous R. Burke. On information and belief, Burke disbursed the entirety of the settlement proceeds to Adrienne Patout Smith after deducting his fees and expenses and both Burke and Smith have refused to provide an accounting or even disclose the amount of the settlement despite repeated requests for information since the underlying matter settled.
> . . . .
>
> Petitioner has sustained damages caused, in whole or in part, by the fault of Porteous Burke by his breach of his fiduciary duty to his client, Roy Patout, in failing to protect Roy's interest with regard to the claim for damages to Roy's land or the settlement funds obtained on his behalf to compensate for that damage, by Burke's failure to safeguard the settlement proceeds obtained for him in connection with that litigation, by Burke's disbursing, without authority, Roy's money to a third party

to whom the funds did not belong, and his failure to appraise Roy Patout of the conflicting interests raised by his representation of multiple clients or to render an accounting. . . . ."

In *In re Hoffman*, 03-2499 (La. 9/9/04), 883 So.2d 425, the attorney represented one of three siblings who contested an uncle's will. The one sibling convinced his brother and sister to sign an affidavit authorizing the attorney to negotiate and settle the claims on their behalf. The attorney did not communicate with the other siblings and relied instead on the affidavit. When the claims were settled, the siblings objected to the disbursement of the funds. The attorney claimed he was disbursing the funds as directed by his client. The Louisiana Supreme Court found the attorney failed to explain a potential conflict in representing all three siblings and failed to obtain the consent of all parties prior to a settlement of the claims and disbursement of the funds. Although *Hoffman* directly addresses an attorney's fiduciary responsibility in a case very similar to the present, the majority attempts to distinguish its implication here by noting the instrument giving rise to the mandate in that case was an affidavit as opposed to a power of attorney in this case. Further acknowledging that *Hoffman* "does discuss an issue of attorney misconduct which bears some resemblance to the one before this court," the majority again dismisses its impact in this case noting "it does not resolve the issue of civil tort liability."

The Rules of Professional Conduct establish the standard of care required of an attorney and "have the force and effect of substantive law."[12] The breach of the fiduciary duty established under the Rules gives rise to a claim in tort. It would be absurd to conclude a court has no legal authority to award damages to a client for a

---

[1] Soderquist v. Kramer, 595 So.2d 825, 829 (La.App. 2 Cir. 1992).

4

ethical violation of the Rules. "[T]he very basis for tort liability . . . is the duty-risk concept. When a lawyer commits a breach of duty imposed by the ethical rules and that breach is a cause in fact of his client's damage, she has a right to recover in tort. The fact that the Supreme Court might also take disciplinary action against him hardly deprives her of her tort recovery." *Ratcliff v. Boydell*, 93-0362 (La.App. 4 Cir. 4/3/96), 674 So.2d 272, 280.

In response, in brief, Mr. Burke amazingly contends there was no attorney-client relationship between he and Mr. Patout. The majority opinion correctly finds there was an attorney-client relationship, but missteps in defining the scope of his responsibility and placing Mr. Patout in the untenable position of having to present evidence which he cannot obtain at this stage of the proceeding because Mr. Burke and Ms. Smith refuse to provide it under a claim of "confidentiality."

The majority also erred in finding *no* evidence exists in the record to support Mr. Patout's claim that Mr. Burke breached a duty to him to safeguard or insure proper distribution of the proceeds. Mr. Burke admits in the record that he distributed the entire settlement proceeds apportioned to the Patout family, less his fees, to Ms. Smith, a non-lawyer. The record also establishes Mr. Burke did not take any steps to insure that the Patout owners would receive a fair share of the proceeds because it was his position, one which he continues to voice before this Court, that Ms. Smith is "solely" responsible as the mandatory for properly distributing the funds. The professional fiduciary duties which our supreme court has held all lawyers owe to their clients required Mr. Burke to do much more than he admitted he did to protect Mr. Roy Patout's interest in the settlement proceeds. Further, the majority legally erred in expecting Mr. Patout to present evidence that Mr. Burke had a duty to notify him of any conflicts of interest. No evidence is required to prove the existence of this paramount duty. The Rules of Professional Conduct, which governs all lawyers'

5

conduct, imposes this duty and the Louisiana Supreme Court has been vigilant in enforcing it through disbarment, suspensions, and public reprimands of lawyers who do not disclose potential conflicts of interest. It is the lawyer's responsibility to make the disclosure before the client's interest is placed in jeopardy. The client is not required to discover and "prove" the conflict which the lawyer knows exists or should know exists. The record in this case contains sufficient evidence tending to show a genuine issue of material fact exists regarding Mr. Burke's knowledge of potential conflicts of interest which may have required, at a minimum, full disclosure to the other Patout family members.

*It is an undisputed fact that Mr. Burke and Ms. Smith took approximately 95% of the settlement proceeds.* Our supreme court recently recognized "an attorney's paramount duty is, and must be, to his client . . . In fact, our law adheres to the principle that in no other agency relationship is a greater duty of trust imposed than in that involving an attorney's duty to his client." "In no relationship is the maxim that 'no man can serve two masters' more rigidly enforced than in the attorney-client relationship." "Indeed, this principle of undivided loyalty is firmly embedded in the Rules of Professional Conduct (RPC), adopted by this court pursuant to its exclusive and plenary power to regulate the practice of law." *See Scheffler v. Adams and Reese, LLP, et al.*, 06-1774 (La. 2/22/07), __So.2d __.

The mandate which Mr. Burke relies on is unavailing. An attorney may not rely on a contract which circumvents or relieves him of his professional responsibility to a client dictated by the Louisiana Rules of Professional Conduct. In *Soderquist v. Kramer*, 595 So.2d 825, 829 (La.App. 2 Cir. 1992) the court stated:

> The Louisiana Rules of Professional Conduct (formerly the Code of Professional Responsibility) have the force and effect of substantive law. The Rules of Professional Conduct, set forth by virtue of the court's power and *responsibility* to exercise its judicial authority, override legislative acts which tend to impede or frustrate that authority.

A statute may have no effect in so far as it is in conflict with these rules governing attorney's conduct. The Louisiana Supreme Court has stated that

> The disciplinary rules are mandatory rules that provide the minimum level of conduct to which an attorney must conform without being subject to disciplinary action. When an attorney enters into a contract with his client in direct and flagrant violation of a disciplinary rule and a subsequent civil action raises the issue of enforcement (or annulment) of the contract, *this court, in order to preserve the integrity of its inherent judicial power, should prohibit the enforcement of the contract which directly contravenes the Code adopted by this court to regulate the practice of law*. Otherwise, this court's authority to regulate attorney conduct will be substantially undermined. *Succession of Cloud,* 530 So.2d 1146,1150 (La. 1988) (emphasis added) (citations omitted).

Mr. Burke apparently attempts to "default on his professional responsibility" by relying on Ms. Smith's contractual obligation as a mandatory. This reliance is in direct violation of the Rules. In *Louisiana State Bar Association v. Edwins*, 540 So.2d 294 (La. 1989), the supreme court stated:

> As our discussion of the facts with regard to Edwins' assistance of a non-lawyer in the unauthorized practice of law shows, Edwins clearly violated DR 9-102 by failing to deposit his client's funds in a separate trust account, by *failing to notify the client of the receipt of his funds, by failing to account to the client properly with respect to the distribution of the funds, by failing to maintain complete records of the client's funds, and by failing to pay the client the funds he was entitled to receive*. The lawyer's professional fiduciary duty of segregation, notification, delivery and accounting cannot be delegated to a non-lawyer. Accordingly, we are satisfied beyond any doubt that when Edwins attempted to turn over all of his duties under DR 9-102 to Robertson he completely defaulted upon his professional responsibility and violated each and every obligation imposed upon him by the rule.

*Id.* at 301 (emphasis added).

Mr. Burke's duty in this case extends well beyond providing a mere accounting of the funds to Mr. Patout, as the majority finds. His duty must be broader than that, otherwise, as alleged in this case, he is free to delegate to a non-lawyer, under the guise of a mandate, his professional fiduciary duty to notify, segregate, maintain complete records, and to *deliver* to his client that portion of the funds owed to him.

7

This important fiduciary duty is imposed upon a lawyer to prevent the very scenario that has occurred in this case.

Ms. Smith says that she, according to the Power of Attorney, served as the "Attorney-in-Fact," a relationship that is prohibited by the express laws of this State and one which Mr. Burke is prohibited from participating in. *See Louisiana State Bar Association v. Edwins*, 540 So.2d 294 (La. 1989); *In Re Cornish*, 04-1453 (La. 12/13/04), 889 So.2d 236; Rules of Professional Responsibility, 5.5(b). As a result of her acting as "Attorney-in-Fact," she contends she is entitled to keep $515,000 of the proceeds for the services she rendered in the case, in addition to the substantial expenses she allegedly occurred in furtherance of her duties as the "Attorney-in-Fact." This amount when added to Mr. Burke's fee, who also served as the "Attorney-in-Fact," consumed virtually all of the funds which were apportioned to the Patout landowners.

In her affidavit, Ms. Smith says she is entitled to this amount for paralegal fees, which incidently, substantially exceeds the handsome fees charged by the licenced attorney, because: "Throughout the thirteen years of litigation, I contributed countless hours of paralegal services and devoted enormous time, effort, and expenses to promote resolution of this dispute."

This is perhaps why *Edwins* made clear that paralegals are not able to act without the supervision of the attorney and they are *never* permitted to act as the "Attorney-in-Fact." The record seems to indicate that Ms. Smith has spent the proceeds of the settlement to buy a new house in Idaho and the lawyer, Mr. Burke, has happily deposited his fees in the Patout and Squirrel Run settlement in his personal account. Mr. Patout is left to engage in years of perhaps protracted litigation with his niece to attempt to collect his share of the "confidential" proceeds. This is a public evil which the Louisiana Rules of Professional Conduct was surely designed

to prevent.

Further, the majority opinion seems to limit Mr. Burke's accounting responsibility only to those funds which he assigned to the Estate of Gaston Patout and Roy Patout. Mr. Roy Patout complains that he is unable to determine whether the share allocated to the Patout family is a fair apportionment of the total settlement vis-a-vis the Squirrel Run claim and expenses. Mr. Patout is entitled to a full accounting of the entire settlement proceeds and the method employed by Mr. Burke to determine the apportionment between the Patout family and Squirrel Run Development. Adrienne Patout Smith discloses in a letter dated, August 20, 2004, to Mr. Patout's present attorney, Mr. J. Louis Gibbens, the following:

> I had hoped that this case consolidated with Squirrel Run would have been considered a separate occurrence, and each would have received respective, equal settlement, which larger proceeds, perhaps more acceptable, could have thus been disbursed to Uncle Roy and others. That is not the reality of this case, in which Patout received one to Squirrel Run's three. This division percentage was debated for many weeks with Mr. Segura. *Finally, it came down to agree or P.R. [Mr. Burke] would have to recluse (sic) himself as attorney because of conflict of interest.*

The letter evidences that, even prior to perfection of the settlement, a conflict emerged involving the Patout family's fair share in the proposed settlement versus that of Squirrel Run.